# BID PROCEDURES[1]

Set forth below are the bid procedures (the "Bid Procedures") to be employed by Silicon Graphics, Inc., and its affiliated debtors and debtors in possession (collectively, "SGI" or the "Debtors") for the sale (the "Transaction") of SGI's assets and operations (the "Acquired Assets"). The Transaction will be implemented through a purchase agreement (the "Stalking Horse Agreement") with an affiliate of Rackable Systems, Inc. (the "Buyer"), subject to the receipt of higher or otherwise better bids according to these Bid Procedures.

---

## Important Dates

- **April 3, 2009:** Proposed date of Bid Procedures Hearing

- **April 7, 2009:** Debtors to send Cure Notices to All Contract Counterparties

- **April 7, 2009:** Debtors to send Contract Assignment Notices to Counterparties to Assigned Contracts

- **April 21, 2009:** Cure Objection Deadline

- **April 27, 2009:** Deadline to submit Bid to be considered for the Auction

- **April 27, 2009:** Deadline for counterparties to Assigned Contracts to object to assignment

- **April 28, 2009:** Deadline to file and serve objections to relief requested at Sale Hearing

- **April 28, 2009:** Proposed date of Auction

- **April 29, 2009:** Proposed date of Sale Hearing

---

## Approval of Bid Procedures and Bid Protections

SGI shall request that the Court set a hearing (the "Bid Procedures Hearing") to occur on or before April 3, 2009, to approve, among other things, entry of an order (the "Bid Procedures Order") approving the Bid Procedures and the bid protections set forth in the Stalking Horse Agreement (the "Bid Protections").

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bid Procedures (the "Bid Procedures Motion").

**<u>Marketing Process</u>**

*Contact Parties*

SGI, in consultation with Houlihan Lokey Howard & Zukin ("<u>Houlihan Lokey</u>"), SGI's investment banker, has developed a list of parties SGI believes may potentially be interested in and would have the financial resources to consummate a competing Transaction to that of the Buyer (a "<u>Competing Transaction</u>"). This list includes both potential strategic investors and financial investors (each, individually, a "<u>Contact Party</u>," and collectively, the "<u>Contact Parties</u>"). Following entry of the Bid Procedures Order, SGI and Houlihan Lokey will commence contacting the Contact Parties to explore interest in Competing Transactions. Contact Parties may include parties who SGI or its advisors previously contacted regarding a Transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a Transaction. SGI will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate. SGI will notify the Buyer of the names of any Contact Party and will keep the Buyer apprised of all contacts with any Contact Party.

The Debtors may distribute to each Contact Party an "<u>Information Package</u>," comprising:

(a)     A cover letter;

(b)     A copy of these Bid Procedures; and

(c)     A copy of a confidentiality agreement in form and substance acceptable to the Debtors (the "<u>Confidentiality Agreement</u>").

*Access to Diligence Materials*

- To participate in the bidding process and receive access to a virtual data room (the "<u>Diligence Materials</u>"), a party must submit an executed Confidentiality Agreement to SGI. A party who qualifies for access to Diligence Materials shall be a "<u>Preliminarily Interested Party</u>."

- All due diligence requests must be directed to Houlihan Lokey.

- For Preliminary Interested Parties who are competitors of SGI or are affiliated with competitors of SGI, SGI reserves the right to withhold any Diligence Materials SGI determines, in its sole discretion, are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Party.

*Updates to Lenders Regarding Marketing Process*

SGI and Houlihan Lokey shall provide Wilmington Trust Corporation, as agent for SGI's prepetition secured lenders (the "<u>Agent</u>"), daily telephonic reports of all sale efforts, expressions of interest, and offers received, and shall provide the Agent with copies of all such offers. Without limiting any obligations in the Stalking Horse Agreement, SGI and Houlihan Lokey shall provide the Buyer with the same reports provided to the Agent promptly (and in any event within 12 hours) after such reports are provided to the Agent.

**Auction Qualification Process**

Each offer, solicitation, or proposal (other than an offer, solicitation or proposal from the Buyer) (each, a "Bid") and each party (other than the Buyer) submitting such a Bid (each, a "Bidder") must satisfy the conditions listed below to be eligible to participate in the Auction. SGI, in its sole discretion, shall determine compliance with each condition.

*Conditions***:**

(a)     Good Faith Deposit:  A Bid (other than a Bid in which the sole purchase price consideration is a credit bid under Section 363(k) of the Bankruptcy Code) must be accompanied by a deposit in the amount of $2,000,000 to an interest bearing escrow account to be identified and established by SGI (the "Good Faith Deposit").

(b)     Higher or Otherwise Better Terms:  A Bid must be on terms that are higher or otherwise better than the terms of the Stalking Horse Agreement.

(c)     Documentation:  A Bid must include (i) executed transaction documents to effect the Competing Transaction (the "Competing Transaction Documents") and (ii) a copy of the Stalking Horse Agreement marked to show all changes requested by the Bidder (including those related to purchase price).  The foregoing documents (including the matters contemplated by clause "(e)" below) shall be provided to the Agent and the Buyer promptly (and in any event within 2 hours) after they are provided to SGI.

(d)     Purchase Price; Related Terms:  A Bid must propose a purchase price, or credit bid an amount of secured debt, of at least $27,000,000, reflecting the purchase price under the Stalking Horse Agreement plus the Breakup Fee and Expense Reimbursement payable under the Stalking Horse Agreement.  No Bidder, other than the Buyer, shall be entitled to any expense reimbursement, breakup fee, termination fee, or similar fee or payment.

(e)     Executory Contracts and Leases:  Competing Transaction Documents shall identify all of SGI's executory contracts and unexpired leases that the Bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction (collectively, the "Assigned Contracts").

(f)     Corporate Authority:  A Bid must include written evidence that demonstrates appropriate corporate authorization for the Bidder to consummate the proposed Competing Transaction; provided, that if the Bidder is an entity specially formed for the purpose of effecting the Competing Transaction, then the Bidder must furnish written evidence of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(g)     Proof of Financial Ability to Perform:  A Bid must include written evidence that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all executory

contracts and leases to be assumed and assigned in such Competing Transaction. Such information should include, among other things, the following:

    (i)      contact names and numbers for verification of financing sources,

    (ii)     evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

    (iii)    the Bidder's current financial statements (audited if they exist); and

    (iv)    any such other form of financial disclosure or credit-quality support information or enhancement, acceptable to SGI in its sole discretion, that demonstrates such Bidder is able to close the Competing Transaction.

(h)    <u>Contingencies</u>:  A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties.

(i)    <u>Irrevocable</u>:  A Bid must be irrevocable through the Auction and, except as provided in the Stalking Horse Agreement, if such Bid is accepted as the Successful Bid or the Backup Bid (as defined below), must continue to remain irrevocable, subject to the terms and conditions of these Bid Procedures.

(j)    <u>Bid Deadline</u>:  Regardless of when a party qualifies as a Preliminarily Interested Party, all Bids must be in writing and received by SGI on or before 5:00 p.m. (prevailing Eastern time) on April 27, 2009 (the "<u>Bid Deadline</u>").

Bids received from Bidders before the Bid Deadline that are determined by SGI to meet the above requirements shall constitute "<u>Qualified Bids</u>," and such Bidders shall constitute "<u>Qualified Bidders</u>."  Only Qualified Bidders may participate at the Auction.  The Stalking Horse Agreement shall constitute a Qualified Bid.  All rights of the Agent and the Secured Lenders under the Bankruptcy Code, orders of the Bankruptcy Court, and the loan documents for the Secured Credit Facility are expressly preserved, including, without limitation, the right of the Agent to submit a credit bid at any time at or before the Auction in accordance with Section 363(k) of the Bankruptcy Code.

**Auction**

If more than one Qualified Bid (including the Stalking Horse Agreement) is received by the Bid Deadline, SGI will conduct an auction (the "<u>Auction</u>") to determine the highest or otherwise best Qualified Bid.  SGI, after consulting with the Agent, will determine the highest or otherwise best Qualified Bid in its business judgment, after taking into account any factors SGI, after consulting with the Agent, deems relevant, including, without limitation, the following criteria (the "<u>Bid Assessment Criteria</u>"):

    (i)      the amount and nature of the consideration;

(ii)     the proposed assumption of any liabilities, if any;

(iii)    the ability of the Qualified Bidder to close the proposed Transaction;

(iv)    the proposed closing date and the likelihood, extent, and impact of any potential delays in closing;

(v)     any purchase price (or similar) adjustments;

(vi)    the impact of the Transaction on any actual or potential litigation; and

(vii)   the net after-tax consideration to be received by SGI's estates.

If no Qualified Bid (other than the Stalking Horse Agreement) is received by the Bid Deadline, SGI may determine not to conduct the Auction.

The Auction shall take place at 10:00 a.m. (prevailing Eastern time) on April 28, 2009, at the offices of SGI's counsel, Ropes & Gray LLP, at 1211 Avenue of the Americas, New York, New York 10036 or such later time on such day or other place as SGI shall notify all Bidders who have submitted Qualified Bids. The Auction shall be conducted according to the following procedures:

(a)     SGI Shall Conduct the Auction.

SGI and its professionals shall direct and preside over the Auction.

At the start of the Auction, SGI shall describe the terms of the Stalking Horse Agreement or, if a higher or otherwise better Qualified Bid is received, such Qualified Bid (the "Auction Baseline Bid").

All Bids made thereafter shall be Overbids (as defined below), shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Buyer shall be permitted to credit bid the full amount of the Breakup Fee and Expense Reimbursement pursuant to any Overbid in connection with each round of bidding. The Agent shall be permitted to credit bid, on behalf of the Secured Lenders, all or any portion of such Secured Lenders' secured claims at any time and in connection with each round of bidding, in accordance with Section 363(k) of the Bankruptcy Code. SGI shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

(b)     Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. The Buyer may, but is not required to, make an Overbid. To submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(i)    *Minimum Overbid Increment*.

Any Overbid after the Auction Baseline Bid shall be made in $250,000 increments.  Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include only cash, the assumption of debt, marketable securities, or a credit bid under section 363(k) of the Bankruptcy Code of an allowed secured claim and, in the case of the Buyer, a credit bid of the Breakup Fee and any Expense Reimbursement, in any combination.

(ii)    *Remaining Terms are the Same as for Qualified Bids*.

Except as modified herein (or, with respect to the Buyer, in the Stalking Horse Agreement), an Overbid must comply with the conditions for a Qualified Bid set forth above and shall constitute a Qualified Bid; provided, that the Bid Deadline shall not apply.  Except as set forth in the Stalking Horse Agreement, any Overbid must remain open and binding on the Bidder until and unless SGI accepts a higher or otherwise better Overbid and subject to the procedures with respect to Backup Bids (as described below).

To the extent not previously provided (which shall be determined by SGI), a Bidder submitting an Overbid (other than any Bidder making a credit bid under Section 363(k) of the Bankruptcy Code) must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to SGI) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

(iii)    *Announcing Overbids*.

SGI shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to SGI's estates based on, among other things, the Bid Assessment Criteria.

(iv)    *Consideration of Overbids*.

SGI shall have the right to declare one or more adjournments in the Auction.  SGI may declare adjournments to, among other things: (1) facilitate discussions between SGI and individual Bidders; (2) allow individual Bidders to consider how they wish to proceed; and (3) give Bidders the opportunity to provide SGI with such additional evidence as SGI may require that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

(c)    Backup Bidder.

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party SGI determines to have the next highest or otherwise best Qualified Bid at the Auction shall be required to serve as a backup bidder (the "Backup Bidder"); provided, that the Buyer shall not be designated as the Backup Bidder absent the Buyer's written consent or agreement on the record.  If the Buyer, but for the preceding clause, would otherwise be the Backup Bidder, the party the Debtors determines to have the next highest or otherwise best

Qualified Bid at the Auction after the Buyer shall be required to serve as the Backup Bidder. The Backup Bidder shall be required to keep its initial Qualified Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern time) on the date that is forty-five (45) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Transaction, because of a breach or failure to perform on the part of such Successful Bidder, SGI may designate the Backup Bidder to be the new Successful Bidder, and SGI will be authorized (but not required) to consummate the Transaction proposed in such Backup Bid without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to SGI, and SGI specifically reserves the right to seek all available damages from the defaulting Successful Bidder. The deposit of the Backup Bidder shall be held by SGI until the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

(d)     Additional Procedures.

SGI may announce at the Auction additional procedural rules (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as the rules are not inconsistent with these Bid Procedures or the Stalking Horse Agreement.

(e)     Consent to Jurisdiction as Condition to Bidding.

The Buyer and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Stalking Horse Agreement, the Auction, or the construction and enforcement of any Competing Transaction Documents.

(f)     Closing the Auction.

SGI shall continue the Auction until there is only one Qualified Bid that SGI determines in its sole discretion (after consultation with the Agent and the creditors committee, if any) is the highest or otherwise best Qualified Bid at the Auction (the "Successful Bid," and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, SGI shall consider, among other things, the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity, as determined by SGI in its sole discretion, after consultation with the Agent, to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed transaction documents memorializing the terms of the Successful Bid.

SGI shall not consider any bids submitted after the conclusion of the Auction.

### Financing Commitment

The Debtors may request, in consultation with the Agent, that a Bid (other than any credit bid under Section 363(k) of the Bankruptcy Code) include a fully-funded commitment, subject to no conditions or contingencies other than selection as the Successful Bidder at the Auction, to provide the Debtors with a debtor-in-possession term loan (a "Bridge Loan"), the proceeds of which will be used by the Debtors, subject to a budget approved by the Agent and the Successful Bidder, to continue their operations pending the closing of the Sale. The Bridge Loan will be memorialized by a note setting forth that the Bridge Loan will (i) have a term of 30 days, (ii) be secured by a lien on substantially all of the Debtors' assets junior in priority to any existing prepetition liens, including the liens under the Debtors' prepetition secured credit facility, which liens will become perfected automatically without recordation upon the issuance of the proceeds of the Bridge Loan, and (iii) be repaid through a reduction in the purchase price for the Acquired Assets on a dollar for dollar basis. For purposes of clarification, the Buyer shall have no obligation to provide a Bridge Loan.

### Procedures for Determining Cure Amounts and
### Adequate Assurance for Counterparties to Assigned Contracts

By April 7, 2009, the Debtors shall send a notice to each counterparty to an executory contract or unexpired lease (each, a "Contract Counterparty") setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such executory contract or unexpired lease (each, a "Cure Notice"). Any Contract Counterparty that objects to the amount set forth in the Cure Notice must file an objection (a "Cure Objection"), on or before 4:00 p.m. prevailing Eastern Time on April 21, 2009, which Cure Objection must be served on (i) counsel for the Debtors, Ropes & Gray LLP, at 1211 Avenue of the Americas, New York, New York 10036, Attn: Mark R. Somerstein; (ii) counsel to the Agent for the Secured Lenders, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Thomas M. Mayer; (iii) counsel to the Buyer, Cooley Godward Kronish LLP, 101 California Street, 5th Floor, San Francisco, California 94111, Attn: J. Michael Kelly; and (iv) counsel to any statutory committees appointed in the Debtors' chapter 11 cases (collectively, the "Service Parties") so that it is actually received no later than 4:00 p.m. prevailing Eastern Time on April 21, 2009. If a Contract Counterparty does not timely file and serve a Cure Objection with respect to a Cure Notice, such Contract Counterparty will be forever barred from objecting to the cure amount proposed in such Cure Notice. If a Contract Counterparty files a timely Cure Objection and the parties are unable to consensually resolve the dispute, a hearing on such Cure Objection will be held at or prior to the Sale Hearing.

By April 7, 2009, the Debtors will send a notice to each counterparty (each, an "Assigned Counterparty") to a contract designated as an Assigned Contract in the Stalking Horse Agreement (a "Contract Assignment Notice"). The Contract Assignment Notice will contain (i) reasonable detail of the proposed Assigned Contract and (ii) information regarding adequate assurance of future performance by the Buyer. Any Assigned Counterparty that objects to the assignment of its Assigned Contract or to the adequate assurance of the Buyer's ability to perform must file an objection (an "Assignment Objection") on or before 4:00 p.m. prevailing Eastern Time on April 27, 2008, which Assignment Objection must be served on the Service

Parties so that it is actually received no later than 4:00 p.m. (prevailing Eastern time) on April 27, 2008. If an Assigned Counterparty does not timely file and serve an Assignment Objection, such Assigned Counterparty will be (i) forever barred from objecting to the assignment of their Assigned Contract to the Buyer; (ii) deemed to have waived all pre-closing defaults and breaches under the Assigned Agreements; (iii) forever barred from objecting to the Buyer's adequate assurance of future performance, and (iv) deemed to have consented, for all purposes, to the assumption and assignment of their Assigned Contracts to the Buyer. If an Assigned Counterparty files a timely Assignment Objection and the parties are unable to consensually resolve the dispute, a hearing on the Assignment Objection will be held at the Sale Hearing.

If the Buyer is not the Successful Bidder at the Auction, then no later than five (5) business days after the Auction, the Debtors will send a subsequent Contract Assignment Notice to each counterparty to a contract designated as an Assigned Contract by the Successful Bidder or the Backup Bidder identifying the Successful Bidder and the Backup Bidder and providing information regarding adequate assurance of future performance by the Successful Bidder and the Backup Bidder. The Sale Order will address the procedures by which the Debtors will assume and assign the Assigned Contracts to a Successful Bidder or Backup Bidder that is not the Buyer.

Nothing shall effect the rights of the Successful Bidder under the Agreement to add or remove executory contracts and unexpired leases from the list of Assigned Contracts prior to the Sale Hearing. The Debtors shall file a list of the Assigned Contracts to be assumed and assigned to the Successful Bidder at the Sale Hearing with the Court on or before the date of the Sale Hearing.

## Sale Hearing

SGI will seek a hearing (the "Sale Hearing") on or before April 29, 2009, at which SGI will seek approval of the Transaction with the Successful Bidder. Any objections to the sale of the Acquired Assets to the Successful Bidder or Backup Bidder must be filed on or before 12:00 p.m. (prevailing Eastern time) on April 28, 2009, and served on the Service Parties so that they are actually received by no later than 12:00 p.m. (prevailing Eastern time) on April 28, 2009.

## Return of Good Faith Deposit

Except as provided in the Stalking Horse Agreement with regard to the Deposit of the Buyer, the Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by SGI (or, with respect to the Buyer's Good Faith Deposit, in one or more accounts mutually agreed to by SGI and the Buyer), but shall not become property of SGI's estate absent further order of the Court. Except as provided in the Stalking Horse Agreement with regard to the Deposit of the Buyer, the Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (i) the closing of the Transaction with the Successful Bidder and (ii) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and

all interest that will have accrued thereon.  If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.