| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
|---|---|

| | : | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| Silicon Graphics, Inc. | : | Case No. 09-11701 (MG) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

# MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEBTORS' MOTION TO SEAL CERTAIN INFORMATION

On April 20, 2009, Silicon Graphics, Inc. and its debtor affiliates ("SGI" or the "Debtors") filed a motion pursuant to Bankruptcy Code § 107(b)(1) and Federal Rule of Bankruptcy Procedure 9018 seeking to file under seal documents containing information relating to previously sealed information, and "until the date of the hearing on the Sale Motion . . . identities of persons and entities who have expressed an interest in acquiring any assets of any of the Debtors . . . ." (*See* ECF # 118, ¶ 7) (the "Motion").

The Court previously approved bidding procedures for a Bankruptcy Code § 363 sale of substantially all of Debtors' assets. Rackable Systems, Inc. ("Rackable") is the stalking-horse bidder under an asset purchase agreement and the approved bidding procedures. The proposed sale to Rackable is subject to higher and better offers. The auction is to take place on April 28, 2009. A court hearing seeking approval of a sale to the successful bidder is scheduled for April 30, 2009.

The orders approving the bidding procedures permitted certain schedules ("Excluded Schedules") containing commercial information to be filed in redacted form, with unredacted copies filed under seal. (*See* ECF # 55, 65.) The motion to seal the Excluded Schedules was unopposed and was supported by evidence showing that the

schedules contain confidential commercial information regarding SGI's contract counter-parties and the non-public terms of their business arrangements. The Court found that the Excluded Schedules contained confidential commercial information and were entitled to protection under § 107(b).

Paragraph 8 of the Debtors' Motion defines a category of Excluded Documents that they now seek additional authority to file under seal:

> 8. The Excluded Documents are only the:
>
> (i) excluded portions of affidavits of service which relate to, and include information regarding, the Sealed Information, for service of the notice of commencement, the notice of the sale of the Debtors' assets and the bid procedures, the notice of notice procedures and master service list, and any other pleadings, notices, or documents which were or will be served in the Debtors' chapter 11 cases (the "Excluded Affidavits");
>
> (ii) excluded portions of the Debtors' schedules of executory contracts which relate to, and include information regarding, the Sealed Information (the "Excluded Contract Schedules");
>
> (iii) excluded portions of any schedules to any asset purchase agreement or bill of sale which relate to, and include information regarding, the Sealed Information; and
>
> (iv) any other affidavits, pleadings, notices, or documents which relate to, and include information regarding, the Sealed Information, and were or will be filed and/or served in the Debtors' chapter 11 cases.

The Debtors have failed to provide any understandable rationale—and certainly no evidence—supporting sealing all documents in categories (i) and (iv) above. Categories (ii) and (iii) are appropriately limited to additional documents that include information already sealed.

More troublesome still is Debtors' request to seal documents identifying "interested parties." The approved bidding procedures provide that the Debtors may disclose to Rackable the names of other parties that express an interest in acquiring the Debtors' assets. The bidding procedures provide that "SGI will notify the Buyer [Rackable] of the names of any Contact Party [a party SGI believes may potentially be interested in and would have the financial resources to consummate a competing Transaction to that of the Buyer] and will keep the Buyer apprised of all contacts with any Contact Party." (ECF # 65.) The Debtors do not want to disclose the names of the interested parties, at least until the time of the sale hearing, although it is unclear what documents the Debtors would otherwise have to file containing the names of these parties before the April 28 auction. In support of the request for relief, the Debtors state in paragraph 11 of the Motion as follows:

> 11. Further, the Debtors are currently engaged in an active and ongoing bidding process among the Interested Parties for the sale of the Debtors' assets. Disclosing the identities of the Interested Parties before the Sale Hearing could severely hamper the highly-sensitive negotiations between the Debtors and the Interested Parties, to the detriment of the bidding process, and interfere with the Debtors' ability to extract the most value from their assets for the benefit of their estates and their creditors.

In paragraph 16 of the Motion, the Debtors also state that "revealing the identities of the Interested Parties at this time, before the Sale Hearing, would chill the ongoing, highly-sensitive negotiations regarding the Sale, and adversely affect the ability of the Debtors to conduct a successful bidding process." The Debtors provide no evidence supporting these conclusory assertions. They also fail to provide any legal support for their argument.

The Court will not provide blanket authority for sealing. To the extent that the Debtors' Motion seeks to seal documents containing information that would disclose or reveal information that the Court has already permitted to be redacted in the Excluded Schedules, the Court agrees that sealing is proper; *provided*, however, that the Debtors specifically identify for the Court the documents that they want to seal and redact. The Debtors may submit to the Court for *in camera* inspection the proposed redacted and unredacted Excluded Documents for this limited category of documents, along with a proposed order permitting filing the unredacted documents under seal. The request to seal documents that identify other parties interested in bidding on Debtors' assets, however, is denied.

## DISCUSSION

### A. Public Access to Bankruptcy Court Records is Presumed

There is a strong presumption and public policy in favor of public access to court records. *See, e.g., Nixon v. Warner Commc'n, Inc.*, 435 U.S. 589, 597-98 (1978); *Neal v. The Kansas City Star (In re Neal)*, 461 F.3d 1048, 1053 (8th Cir. 2006); *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005); *In re Food Management Group, LLC,* 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007); *In re FiberMark, Inc.*, 330 B.R. 480, 505 (Bankr. D. Vt. 2005). The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir. 1994) (public access "helps safeguard 'the integrity, quality, and respect in our judicial system,' and permits the public 'to keep a watchful eye on the workings of public agencies'") (citations omitted). "The public interest in

openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved, as they are in this matter." *Food Management Group, LLC,* 359 B.R. at 553; *Gitto*, 422 F.3d at 7 ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system."); *In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984) ("This policy of open inspection, established in the Bankruptcy Code itself, is fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised.").

The presumption of open access to court records is codified in § 107 of the Bankruptcy Code. Nevertheless, Congress implemented a statutory exemption to prevent disclosure of commercial information in a bankruptcy case. *Orion Pictures Corp.*, 21 F.3d at 27. Where a party in interest moves to protect "commercial information" from disclosure, the court must grant protection. *See* 11 U.S.C. § 107(b) ("On request of a party in interest, the bankruptcy court *shall* . . . (1) protect an entity with respect to . . . commercial information") (emphasis added). Once a court determines that a party in interest is seeking protection of information that falls within one of the categories enumerated in § 107(b), "the court is required to protect a requesting party and has no discretion to deny the application." *Orion Pictures Corp.,* 21 F.3d at 27.

The § 107(b) exception to the general right of access, under "compelling or extraordinary circumstances," is narrow. *See id.* ("Congress, itself, has recognized that under compelling or extraordinary circumstances, an exception to the general policy of public access is necessary."). "In most cases a judge must carefully and skeptically

review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep this material private. *Id.* (sealing official documents should not be done without a compelling reason) (citing *City of Hartford v. Chase*, 942 F.2d 130, 135-136 (2d Cir. 1991)).

In cases where protection is required, the form of protection that must be granted is not commanded by the statute. The Court has discretion in deciding how to protect commercial information. *See Gitto*, 422 F.3d at 9 ("It is true that § 107(b)(2) speaks of protection in general terms rather than of wholesale sealing, and that courts must therefore exercise some discretion in determining what form of protection to grant.").

B. **An Auction Process Under Section 363 Requires Transparency and Disclosure**

In this case, as one of the first day motions, the Debtors sought approval to conduct a § 363 sale of substantially all of their assets. The Debtors' precarious financial situation made this result inevitable if the going concern business and workers' jobs are to be preserved. But an auction sale process (here with a stalking-horse bidder) requiring court approval demands transparency. *See In re Food Management Group, LLC*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008) (denying motion to dismiss claims against estate professionals for failing to disclose information about § 363 sale process). Other than the conclusory assertion that disclosing the identities of interested parties will chill the bidding, the Debtors have offered no factual or legal support for the requested relief permitting sealing of court documents containing the identities of interested parties.

While general principles are enough to deny the requested relief, at least one prior decision has addressed the issue of confidentiality of the identity of an interested bidder in a sale process. In *In re Barney's Inc,* 201 B.R. 703 (Bankr. S.D.N.Y. 2003), the

6

chapter 11 debtors, Barney's Inc. and affiliates, received a preliminary investment proposal from an entity whose identity was not disclosed publicly. The debtors moved under § 363(b) to pay the investor's due diligence expenses. The debtors sought a protective order permitting the debtors to file the motion under seal pursuant to § 107(b) and to limit service of the unredacted motion and supporting papers. The debtors maintained that the investor's identity constituted "commercial information" and further contended that the proposed investor would withdraw if the debtors made its identity public. The court denied the protective order. The court held that the preliminary proposal letter "does not reveal aspects of the debtor's commercial operations and debtor's competitors will not be unfairly advantaged by the disclosure of the Potential Investor's identity or the terms of its letter." *Id.* at 709. The court reasoned that although disclosing the information exposed the potential investor to the risk of being outbid, the investor must assume such risk "because sales of debtors' assets generally are made subject to higher and better offers." *Id.* Likewise, the court was not swayed by the debtors' concern that the potential investor would withdraw. The court looked to the potential investor's motives to remain unnamed—to avoid embarrassment if unsuccessful and to remain free to conduct other transactions—and held that these interests did not justify the requested relief. *Id.* at 709.

The court's reasoning in *Barney's* applies with equal force in this case. Here, of course, the identity of the stalking-horse bidder, Rackable, is public and the identities of any other interested parties must be disclosed to Rackable. In light of this third-party disclosure, the information sought to be maintained as confidential cannot qualify as confidential commercial information of the Debtors. And even if the information could

7

be considered confidential commercial information, the public policy favoring public access to court records—particularly in bankruptcy court cases—would trump any arguments for providing any significant form of protection. Most certainly, in the exercise of its discretion, the Court would require disclosure of the identities of interested parties. This ruling does not require premature disclosure of bids. The actual bidding process is governed by the bidding procedures orders. In this case, it may well be that unsecured creditors will receive little, if any, recovery. The creditor body and the public are entitled to know that a full and fair auction process was conducted and who the interested parties were during the bidding process.

Section 107(b) only deals with requirements for sealing court records. It does not impose affirmative obligations on any party to file any particular documents with the court. Nothing in this Opinion addresses what, if any, information the Debtors must file or when they must file it. Negotiations between parties or potential parties are ordinarily conducted in private. Sealing rules do not require otherwise. Seeking court approval of a § 363 sale, however, requires full and complete disclosure of all material facts.

## CONCLUSION

For the foregoing reasons, the Debtors' Motion to seal documents is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

DATED:  April 24, 2009
        New York, New York

                                    **  /s/Martin Glenn          **
                                        MARTIN GLENN
                                United States Bankruptcy Judge