**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                                    :          **Chapter 11**
:
**SILICON GRAPHICS, INC.,** *et al.,*                    :          **Case No. 09-11701 (MG)**
:
Debtors.                                        :          **(Jointly Administered)**
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER (A) APPROVING ASSET PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE SUCCESSFUL BIDDER; (B) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH

Upon the motion (the "Motion")[1] of Silicon Graphics, Inc., and certain of its

direct and indirect subsidiaries, as debtors and debtors in possession (collectively, the

"Debtors"), for the entry of an order (the "Order") pursuant to Bankruptcy Code sections 105(a),

363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 (a) approving an asset

purchase agreement (as amended by the Amendment to Asset Purchase Agreement attached

hereto as Exhibit B, the "Agreement") between the Debtors and the Successful Bidder, a

designee of Rackable Systems, Inc. ("Rackable") that is a wholly owned subsidiary of Rackable,

to acquire substantially all of the assets of the Debtors, attached as Exhibit A (excluding exhibits,

schedules and attachments); (b) authorizing the sale of the Purchased Assets (as defined in the

Agreement) free and clear of all Encumbrances (as defined in the Agreement); and

(c) authorizing the assumption and assignment of executory contracts and unexpired leases (the

Assumed Agreements, as defined in the Agreement) to the Successful Bidder; and this Court

having determined that the relief requested in the Motion is in the best interests of the Debtors,

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor:

THE COURT HEREBY FINDS THAT:

## Jurisdiction, Final Order, and Statutory Bases

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

C.    The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105(a), 363(b), (f), and (m), and 365 and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), and (h), 6006(a), (c), and (d), 9007, and 9014.

D.    This Court entered the Bid Procedures Order on April 3, 2009 [Docket No. 55]

## Notice

E.    Actual written notice of the Sale Hearing, the Auction, the Motion, the sale of the Purchased Assets, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested entities, including, but not limited to the following parties:

(i)     the Office of the United States Trustee for the Southern District of New York;

(ii)    the Debtors' fifty largest unsecured creditors, on a consolidated basis;

(iii)   counsel to the agent for the Debtors' prepetition secured lenders;

(iv)    the Internal Revenue Service; and

(v)     all entities who are known to possess or assert a claim against the Debtors (collectively, the "Notice Parties").

F.      On April 10, 2009, the Debtors published notice of the time and place of the proposed Auction, the time and place of the Sale Hearing, and the time for filing an objection to the relief requested in the Motion relating to the Transaction in the national edition of *The Wall Street Journal*.

G.      In accordance with the provisions of the Bid Procedures, the Debtors have served notice upon the counterparties to Assumed Agreements: (i) that the Debtors seek to assume and assign certain Assumed Agreements on the closing date of the Transaction (the "Closing Date"); and (ii) of the relevant cure amounts. The service of such notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of establishing a cure amount for the Assumed Agreements. Each of the counterparties to the Assumed Agreements (collectively, the "Contract Counterparties") have had an opportunity to object to the cure amounts and/or the proposed assignment and assumption of the Assumed Agreements set forth in the notice and the hearing with regard to those objections filed in connection with the notices described in this paragraph G shall be held before this Court on May 8, 2009.

H.      The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion regarding the sales process, including, without limitation:

(i) determination of final cure amounts as to the Final Assumed Agreements (as defined below); and (ii) approval and authorization to serve the Bid Procedures Notice.

I.     The Bid Procedures Notice provided all interested parties with timely and proper notice of the Transaction, the Sale Hearing, and the Auction.

J.     As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Sale Hearing, and the Transaction has been provided in accordance with Bankruptcy Code sections 102(1), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014.  The Debtors also have complied with all obligations to provide notice of the Motion, the Auction, the Sale Hearing, and the Transaction required by the Bid Procedures Order.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, or the Transaction is required.

K.     The disclosures made by the Debtors concerning the Agreement, the Auction, the Transaction, and the Sale Hearing were good, complete, and adequate.

### Good Faith of Successful Bidder

L.     The Successful Bidder is not an "insider" of any of the Debtors, as defined in Bankruptcy Code section 101(31).

M.     The Successful Bidder is purchasing the Purchased Assets in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m).  The Successful Bidder is, therefore, entitled to the full protections of section 363(m) and has proceeded in good faith in all respects in connection with this proceeding in that, among other things: (i) the Successful Bidder complied with the provisions in the Bid Procedures Order; (ii) all payments to be made by the Successful Bidder and other agreements or arrangements entered into by the Successful Bidder in connection with the Transaction have been disclosed;

(iii) the Successful Bidder has not violated Bankruptcy Code section 363(n) by any action or inaction; (iv) no common identity of directors or controlling stockholders exists between the Successful Bidder and any of the Debtors; and (v) the Agreement was negotiated at arm's-length and in good faith.

**Highest and Best Offer**

N.      The Debtors conducted an auction process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order.  The auction process set forth in the Bid Procedures Order and the Bid Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The Auction was duly noticed and conducted in a noncollusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

O.      The Agreement constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Agreement constitutes the highest and best offer for the Purchased Assets constitutes a reasonable exercise of the Debtors' business judgment.

P.      The Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases.  No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Successful Bidder.

Q.      Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors, their estates, and all other parties-in-interest.

R.     The Debtors have demonstrated compelling circumstances and a good and sufficient business purpose and justification for the Transaction.

**No Fraudulent Transfer**

S.     The consideration provided by the Successful Bidder pursuant to the Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, and the District of Columbia.

T.     The Successful Bidder is not a mere continuation of the Debtors or their estates and there is no continuity between the Successful Bidder and the Debtors.  The Successful Bidder is not holding itself out to the public as a continuation of the Debtors.  The Successful Bidder is not a successor to the Debtors or their estates and the Transaction does not amount to a consolidation, merger, or de facto merger of the Successful Bidder and the Debtors. Except to the extent set forth in the Agreement, the Successful Bidder is not liable as a successor under any theory of successor liability for Encumbrances that encumber or relate to the Purchased Assets.

**Validity of Transfer**

U.     The Debtors have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Agreement, except as otherwise set forth in the Agreement.

V.     The transfer of each of the Purchased Assets to the Successful Bidder will be, as of the Closing Date, a legal, valid, and effective transfer of such assets, and each such transfer vests or will vest the Successful Bidder with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Encumbrances accruing, arising, or relating thereto any

time prior to the Closing Date, except for any Permitted Encumbrances and Assumed Liabilities (each as defined in Agreement) under the Agreement.

## Satisfaction of Section 363(f)

W.    The Successful Bidder would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Purchased Assets to the Successful Bidder, and the assumption, assignment, and sale of the Assumed Agreements to the Successful Bidder, were not free and clear of all Encumbrances of any kind or nature whatsoever (except the Permitted Encumbrances and Assumed Liabilities), or if the Successful Bidder would, or in the future could, be liable for any of such Encumbrances.

X.    The Debtors may sell the Purchased Assets free and clear of all Encumbrances against the Debtors, their estates, or any of the Purchased Assets (except for the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Wilmington Trust Company, as agent and collateral agent ("Wilmington") for the Debtors' secured lenders (the "Secured Lenders"), has expressly consented to the sale of the Purchased Assets as and to the extent provided in this Order and the Agreement, free and clear of all Encumbrances against any of the Purchased Assets held by, maintained by or otherwise in favor of the Secured Lenders, and the Secured Lenders waive all claims and objections that could be raised now or in the future through the Closing Date with respect to the Transaction. Those holders of Encumbrances against the Debtors, their estates, or any of the Purchased Assets who did not object, or who withdrew their objections, to the Transaction or the Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances, if any, in each instance

against the Debtors, their estates, or any of the Purchased Assets, attach to the cash proceeds of the Transaction ultimately attributable to the Purchased Assets in which such creditor alleges an interest, in the same order of priority, with the same validity, force, and effect that such creditor had prior to the Transaction, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**<u>Assumption and Assignment of Final Assumed Agreements</u>**

Y. The assumption and assignment of the Final Assumed Agreements (as defined below) pursuant to the terms of this Order is integral to the Agreement, is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents a reasonable exercise of the Debtors' business judgment.

Z. On or prior to May 8, 2009, the Debtors shall file with this Court a list of those Assumed Agreements to be assumed and assigned to the Successful Bidder (the "<u>Final Assumed Agreements</u>") and those amounts necessary under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A) to cure all monetary defaults and pay all actual pecuniary losses under the Assumed Agreements (the "<u>Cure Amounts</u>"), and such Final Assumed Agreements shall be assumed and assigned to the Successful Bidder without further order of this Court. Notwithstanding anything to the contrary in this Order or in the Agreement, the Final Assumed Agreements shall not include those Assumed Agreements for which counterparties have filed objections to the proposed cure amount or assumption and assignment, and those objections shall be heard before this Court on May 8, 2009.

AA. Pursuant to the terms of the Agreement, on or before the Closing Date, the Successful Bidder shall have: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Closing Date under any of the Final Assumed Agreements, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; (ii) provided compensation

or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the Closing Date under any of the Final Assumed Agreements, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code; and (iii) provided adequate assurance of its future performance under the relevant Final Assumed Agreements within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

## Compelling Circumstances for Immediate Sale

BB.    To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the closing of the Transaction occur within the time constraints set forth in the Agreement.  Time is of the essence in consummating the Transaction.

CC.    Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the purchase price under the Agreement, the Transaction constitutes a reasonable exercise of the Debtors' business judgment and should be approved.

DD.    The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

AND THE COURT HEREBY ORDERS THAT:

## General Provisions

1.    The relief requested in the Motion, as modified pursuant to this Order, is GRANTED.  The Transaction contemplated by the Motion and the Agreement is approved as set forth in this Order.

2.    Bid Procedures Order Incorporated.  This Court's findings of fact and conclusions of law in the Bid Procedures Order are incorporated herein by reference.

3.     Objections Overruled.  Except as set forth in Paragraph 20 of this Order, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

**Approval of Agreement**

4.     Agreement Approved.  The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.     Authorization to Consummate Transaction.  Pursuant to section 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Transaction pursuant to and in accordance with the terms and conditions of the Agreement, (b) close the Transaction as contemplated in the Agreement and this Order, and (c) execute and deliver, perform under, consummate, implement, and close the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Transaction, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Agreement and such other ancillary documents.

6.     Order Binding on All Parties.  This Order shall be binding in all respects upon the Debtors and their estates and creditors, all holders of equity interests in any Debtor, all holders of any Claim(s) (as defined in the Agreement, whether known or unknown, against any Debtor, any holders of Encumbrances against or on all or any portion of the Purchased Assets, including, but not limited to the Secured Lenders, all Contract Counterparties, the Successful Bidder and all successors and assigns of the Successful Bidder, and any trustees, examiners, responsible officers, estate representatives, or similar entities for any of the Debtors, if any,

subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Successful Bidder, and their respective successors and assigns.

### Transfer of Purchased Assets

7.     Transfer of Purchased Assets Authorized.  Pursuant to Bankruptcy Code sections 105(a), 363(b), 363(f), 365(b), and 365(f), the Debtors are authorized to transfer the Purchased Assets on the Closing Date, and the Successful Bidder is directed to pay the Purchase Price to Wilmington.  Except as otherwise provided in the Agreement, the Purchased Assets shall be transferred to the Successful Bidder "as is, where is" with all faults in accordance with the Agreement upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and, upon Wilmington's receipt of the Purchase Price, shall be free and clear of all Encumbrances except any Permitted Encumbrances and Assumed Liabilities.  Upon the closing of the Transaction, the Successful Bidder shall take title to and possession of the Purchased Assets, subject only to any Permitted Encumbrances and Assumed Liabilities.

8.     Surrender of Purchased Assets by Third Parties.  All entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Successful Bidder or its assignee at the closing of the Transaction.  All entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to the Successful Bidder in accordance with the terms of the Agreement and this Order.

9.     <u>Transfer Free and Clear of Encumbrances</u>.  Pursuant to section 363(f) of the Bankruptcy Code, the transfer of title to the Purchased Assets, including, but not limited to, the Final Assumed Agreements and the Owned Real Property (identified as 100 North Cashman Drive (Parcel # 211-3449.0500), 1168 Technology Way (f/k/a Industrial Boulevard) (Parcel # 211-3449) and 890 Technology Way (f/k/a Industrial Boulevard) (Parcel # 211-3447.500), all located in the City of Chippewa Falls, Chippewa County, Wisconsin), all assets of Silicon Graphics Federal, Inc. ("<u>SGF</u>"), as well as all of the capital stock of SGF, and, to the extent the Successful Bidder acquires all of the capital stock of SGF (as provided in the Agreement), shall be free and clear of any and all Encumbrances Liabilities (as defined in the Agreement), except for Permitted Encumbrances and Assumed Liabilities, including, but not limited to Encumbrances held by, maintained by, or otherwise in favor of and all Liabilities to the Secured Lenders.  Without limiting the generality of the foregoing, the Owned Real Property shall be sold and title thereto shall be transferred free and clear from of all Encumbrances and Liabilities, including, but not limited to the lien(s) created by following (collectively, the "<u>Owned Real Property Mortgage Documents</u>"), the release of which the secured parties thereunder have consented to: (a) that certain Mortgage with Security Agreement & Assignment of Rents and Leases (includes Fixture Filing Under Commercial Code), made by Debtor for the benefit of Morgan Stanley Trust, N.A., as agent, dated October 17, 2006 and recorded October 20, 2006 as Document No. 728288, as assigned to Wilmington Trust FSB pursuant to that certain Notice of Assignment of Mortgage dated March 24, 2009 and recorded March 27, 2009 as Document No. 764997; (b) that certain UCC Financing Statement, naming Debtor, as debtor, and Morgan Stanley Trust, N.A., as agent, as secured party, filed October 20, 2006 as Document No. 728289, as amended by UCC Financing Statement Amendments, filed September 14, 2007 as Document

No. 742608 and March 27, 2009 as Document No. 764999, as assigned to Wilmington Trust

FSB by UCC Financing Statement Amendment filed March 27, 2009 as Document No. 764998;

and (c) that certain UCC Financing Statement, naming Debtor, as debtor, and Wilmington Trust

FSB, as secured party, filed March 27, 2009 as Document No. 765000. Except to the extent set

forth in the Agreement, the Successful Bidder is not and shall not be liable as a successor under

any theory of successor liability for Encumbrances that encumber or relate to the Purchased

Assets. All Encumbrances shall attach solely to the proceeds of the Transaction with the same

validity, priority, force, and effect that they now have as against the Purchased Assets, and

subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

     10. <u>Creditors Directed to Release Encumbrances</u>.  On the Closing Date, each

creditor is authorized and directed to execute such documents and take all other actions as may

be necessary to release Encumbrances (except for Permitted Encumbrances and Assumed

Liabilities) on the Purchased Assets, if any, as provided for herein, as such Encumbrances may

have been recorded or may otherwise exist.  Without limiting the generality of the foregoing, and

upon the occurrence of the Closing and the receipt by Wilmington of the Purchase Price, the

secured parties under the Owned Real Property Mortgage Documents are ordered to fully and

completely release the lien(s) on the Owned Real Property created thereby.

     11. <u>Authorization to Record Releases</u>.  If any entity (a "<u>Claim Holder</u>") which

has filed statements or other documents or agreements evidencing Encumbrances on, or interests

in, all or any portion of the Purchased Assets shall not have delivered to the Debtors prior to the

closing of the Transaction, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of liens and easements, and any

other documents necessary or desirable to the Successful Bidder for the purpose of documenting

the release of all Encumbrances that such Claim Holder has or may assert with respect to all or any portion of the Purchased Assets (including, without limitation, the release of the lien(s) on the Owned Real Property created by the Owned Real Property Mortgage Documents), then (i) the Debtors are authorized to execute and file such statements, instruments, releases, and other documents on behalf of such Claim Holder with respect to the Purchased Assets and (ii) the Successful Bidder is authorized to file, register, or otherwise record a certified copy of this Order with the appropriate clerk(s) and/or recorder(s), which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in the Purchased Assets as of the Closing Date of any kind or nature whatsoever (including, without limitation, the release of the lien(s) on the Owned Real Property created by the Owned Real Property Mortgage Documents), other than the Permitted Encumbrances and Assumed Liabilities; provided, however, that any liens held by Wilmington for the benefit of the Secured Lenders shall be released and the authorization set forth in this Paragraph 11 shall apply to the release of such liens only upon the occurrence of the Closing and the receipt by Wilmington of the Purchase Price.

12. <u>Permanent Injunction</u>.  Except as expressly permitted or otherwise specifically provided by the Agreement or this Order, all entities holding Encumbrances in all or any portion of the Purchased Assets (other than Permitted Encumbrances and the Assumed Liabilities) arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Purchased Assets to the Successful Bidder, are hereby forever prohibited and permanently enjoined from asserting such Encumbrances against the Successful Bidder, its successors or assigns, their property, or the Purchased Assets.

13.    _Recording Offices_.  This Order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

**Assumed Agreements**

14.    _Authorization to Assume and Assign_.  Upon the closing of the Transaction, the Debtors are authorized to assume and assign each of the Final Assumed Agreements to the Successful Bidder free and clear of all Encumbrances, as described herein. The payment of the applicable Cure Amounts (if any) with regard to the Final Assumed Agreements shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and (b) compensate for any actual pecuniary loss resulting from such default.  The Debtors shall then have assumed the Final Assumed Agreements and assigned them to the Successful Bidder and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtors of the Final Assumed Agreements shall not be a default thereunder.  After the payment of the relevant Cure Amounts, neither the Debtors nor the Successful Bidder shall have any further liabilities to the Contract Counterparties other than the Successful Bidder's obligations under the Final Assumed Agreements that accrue and become due and payable on or after the Closing Date.  Nothing in this Order shall effect the rights of the Successful Bidder, until the Closing (as defined in the

Agreement), in its sole discretion, to add (subject to further notice and/or hearing as required by the Bankruptcy Code) any executory contract or unexpired lease of the Debtors to the list of Final Assumed Agreements.

15. <u>Assignment Requirements Satisfied</u>. Any provisions in any Final Assumed Agreements that prohibit or condition the assignment of such Final Assumed Agreements or allow the party to such Final Assumed Agreements to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Final Assumed Agreement constitute unenforceable anti- assignment provisions that are void and of no force and effect. Each Contract Counterparty who failed to file an objection to the proposed assignment of its contract with the Debtors (a "<u>Contract Assignment Objection</u>"), or by virtue of electing to withdraw such objection, is deemed to consent to the assumption by the Debtors and assignment to the Successful Bidder of their Final Assumed Agreement. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Successful Bidder of the Final Assumed Agreements have been satisfied. Upon the closing of the Transaction, in accordance with sections 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Final Assumed Agreements.

16. <u>365(k)</u>. Upon the closing of the Transaction and payment of the relevant Cure Amounts related to the Final Assumed Agreements, if any, the Successful Bidder shall be deemed to be substituted for the Debtors as a party to the applicable Final Assumed Agreements and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Final Assumed Agreements.

17. <u>No Default</u>.  Upon the payment of the applicable Cure Amount, if any, the Final Assumed Agreements will remain in full force and effect, and no default shall exist under the Final Assumed Agreements nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

18. <u>Adequate Assurance Provided</u>.  The Successful Bidder has provided adequate assurance of future performance under the relevant Final Assumed Agreements within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

19. <u>No Fees</u>.  There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Successful Bidder or the Debtors as a result of the assumption and assignment of the Assumed Agreements.

20. <u>Injunction</u>.  Pursuant to Bankruptcy Code sections 105(a), 363, and 365, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or the Successful Bidder any assignment fee, default, breach, claim for pecuniary loss, or condition to assignment arising under or related to the Final Assumed Agreements existing as of the Closing Date or arising by reason of the Closing.  Notwithstanding the foregoing or anything else to the contrary in this Order or in the Agreement, any timely objection of any Contract Counterparty to any Cure Amount, Cure Notice or any Assignment Notice is hereby expressly preserved and shall be addressed via separate order of this Court.

<b><u>Other Provisions</u></b>

21. <u>No Liability for Claims Against Debtors</u>.  Except for the Permitted Encumbrances and Assumed Liabilities or as otherwise expressly set forth in this Order or the Agreement, the Successful Bidder shall not have any liability or other obligation of the Debtors arising under or related to any of the Purchased Assets, including, but not limited to the Excluded Liabilities (as defined in the Agreement).  Without limiting the generality of the foregoing, and

except as otherwise specifically provided herein or in the Agreement, the Successful Bidder shall not be liable for any claims against the Debtors or any of their predecessors or affiliates, and the Successful Bidder shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, substantial continuity, or, except as provided in the Agreement, WARN Act (as defined in the Agreement) and employee benefit and/or welfare plan(s), (including, without limitation, agreements, contracts, plans, policies or obligations related to or concerning medical, vision, disability, or any health related matters), whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any Tax (as defined in the Agreement) arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Purchased Assets prior to the closing of the Transaction, and the Successful Bidder shall be exonerated of any successor liability to any state taxing authority with regard to any Tax, including sales tax. The Successful Bidder has given substantial consideration under the Agreement for the benefit of the holders of any Encumbrances relating to the Purchased Assets.

22. <u>Good Faith</u>. The transactions contemplated by the Agreement are undertaken by the Successful Bidder without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction (including the assumption and assignment of the Assumed Agreements), unless such authorization and consummation of such Transaction are duly stayed

pending such appeal.  The Successful Bidder is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

23.     Plan Not to Conflict.  Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

24.     Effective Immediately.  Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Successful Bidder are authorized, but are not required, to close the Transaction immediately upon entry of this Order, notwithstanding the ten-day stay periods in Bankruptcy Rules 6004(h) and 6006(d), which are expressly waived.

25.     No Brokers.  There are no brokers involved in consummating the Transaction and no brokers' commissions are due.

26.     Agreement Approved in Entirety.  The failure specifically to include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

27.     Modifications to Agreement.  The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; provided,

that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

28.    Bulk Sales Law.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to any of the transactions under the Agreement.

29.    Standing.  The transactions authorized herein shall be of full force and effect, regardless of any Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

30.    Timing.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.    Order to Govern.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.

32.    Order Governs Over Agreement.  To the extent there are any inconsistencies between the terms of this Order and the Agreement (including all ancillary documents executed in connection therewith), the terms of this Order shall govern.

33.    Authorization to Effect Order.  The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Order in accordance with the Motion.

34.    Automatic Stay. The automatic stay pursuant to Section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow the Successful Bidder to deliver any notice provided for in the Agreement, and (ii) allow the Successful Bidder to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

35. <u>Findings of Fact/Conclusions of Law</u>.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the findings of fact set forth herein constitute conclusions of law, they are adopted as such.  To the extent any of the conclusions of law set forth herein constitute findings of fact, they are adopted as such.

36. <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to the Successful Bidder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction.

Dated: New York, New York
        April 30, 2009

                                    /s/ Martin Glenn
                                    UNITED STATES BANKRUPTCY JUDGE