**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                                     :    **Chapter 11**
                                          :
**GRAPHICS PROPERTIES HOLDINGS,** :    **Case No. 09-11701 (MG)**
**INC. (f/k/a SILICON GRAPHICS, INC.),** :
*et al.*,                                 :    **(Jointly Administered)**
                                          :
            **Debtors.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' JOINT PLAN OF REORGANIZATION
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Tel:  212-596-9000
Fax: 212-596-9090
Mark I. Bane (MB 4883)
Mark R. Somerstein (MS 9721)
Shuba Satyaprasad (SS 5875)
Patricia I. Chen (*admitted pro hac vice*)


Attorneys for the Debtors and
Debtors in Possession


Dated:  August 17, 2009

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND INTERPRETATIONS ............................................................................ 1

A.  Definitions ............................................................................................................................ 1

1.1  503(b)(9) Administrative Claim ........................................................................... 1

1.2  Administrative Expense Claim ............................................................................. 1

1.3  Affiliate ................................................................................................................ 1

1.4  Allowed ............................................................................................................... 1

1.5  Asset Purchase Agreement .................................................................................. 2

1.6  Assumed Executory Contract and Unexpired Lease List .................................... 2

1.7  ATI Litigation ..................................................................................................... 2

1.8  Available Cash ..................................................................................................... 2

1.9  Avoidance Actions .............................................................................................. 2

1.10  Ballot ................................................................................................................... 2

1.11  Bankruptcy Code ................................................................................................. 2

1.12  Bankruptcy Court ................................................................................................ 2

1.13  Bankruptcy Rules ................................................................................................ 2

1.14  Beneficial Interests .............................................................................................. 2

1.15  Beneficiaries ........................................................................................................ 2

1.16  Business Day ........................................................................................................ 2

1.17  Buyer ................................................................................................................... 3

1.18  Buyer Assumed Liabilities .................................................................................. 3

1.19  Cash ..................................................................................................................... 3

1.20  Causes of Action ................................................................................................. 3

1.21  Chapter 11 Cases ................................................................................................. 3

1.22  Claim ................................................................................................................... 3

1.23  Claims Objection Bar Date .................................................................................. 3

1.24  Class .................................................................................................................... 3

1.25  Closing Date ........................................................................................................ 3

1.26  Collateral ............................................................................................................. 3

1.27  Commencement Date ........................................................................................... 3

1.28  Confirmation Date ............................................................................................... 3

1.29  Confirmation Hearing .......................................................................................... 4

1.30  Confirmation Order .............................................................................................. 4

1.31  Consummation ..................................................................................................... 4

1.32   Contingent Claim ........................................................................................4

1.33   Debtors........................................................................................................4

1.34   Debtors in Possession ................................................................................4

1.35   Disbursing Agent .......................................................................................4

1.36   Disclosure Statement .................................................................................4

1.37   Disputed .....................................................................................................4

1.38   Disputed Claims Reserve ...........................................................................4

1.39   Disputed General Unsecured Claim ...........................................................4

1.40   Disputed Priority Claim .............................................................................5

1.41   Disputed Priority Tax Claim ......................................................................5

1.42   Disputed General Unsecured Claims Reserve ...........................................5

1.43   Disputed Prior Claims Reserve..................................................................5

1.44   Disputed Priority Tax Claims Reserve ......................................................5

1.45   Distribution Record Date ...........................................................................5

1.46   Effective Date ............................................................................................5

1.47   Entity .........................................................................................................5

1.48   Equity Interest ...........................................................................................5

1.49   Equity Security ..........................................................................................5

1.50   Estate .........................................................................................................5

1.51   Executory Contract and/or Unexpired Lease .............................................5

1.52   Final Distribution Date ..............................................................................5

1.53   Final Order .................................................................................................6

1.54   General Unsecured Claim ..........................................................................6

1.55   General Unsecured Claim Trust Interests ..................................................6

1.56   Goods Payable ...........................................................................................6

1.57   Graphics Properties ...................................................................................6

1.58   Holdback Amount ......................................................................................6

1.59   Holdback Escrow Account .........................................................................6

1.60   Holder ........................................................................................................6

1.61   Initial Distribution Date ............................................................................6

1.62   Intercompany Claim ..................................................................................6

1.63   Intercompany Interest ................................................................................6

1.64   Interim Distribution Date ...........................................................................7

1.65   Lien ...........................................................................................................7

1.66   Liquidating Trust ......................................................................................7

1.67    Liquidating Trust Agreement ...................................................................7

1.68    Liquidating Trust Assets .......................................................................7

1.69    Liquidating Trustee ..............................................................................7

1.70    Local Bankruptcy Rules ......................................................................7

1.71    New Board ...........................................................................................7

1.72    New By-Laws .......................................................................................7

1.73    New Certificate of Incorporation ........................................................7

1.74    New Common Stock .............................................................................7

1.75    New Organizational Documents ..........................................................7

1.76    Non-Debtor Subsidiary ........................................................................7

1.77    Old Common Stock ..............................................................................7

1.78    Old Common Interests..........................................................................7

1.79    Other Secured Claim ...........................................................................8

1.80    Person ...................................................................................................8

1.81    Plan ......................................................................................................8

1.82    Prepetition Agent .................................................................................8

1.83    Prepetition Credit Agreement .............................................................8

1.84    Prepetition Credit Agreement Claims .................................................8

1.85    Prepetition Credit Agreement Secured Claim ....................................8

1.86    Prepetition Credit Agreement Unsecured Claim .................................8

1.87    Prepetition Lenders ..............................................................................8

1.88    Priority Claims .....................................................................................8

1.89    Priority Claims Trust Interests ............................................................8

1.90    Priority Tax Claim ...............................................................................8

1.91    Priority Tax Claim Trust Interests ......................................................8

1.92    Professional ..........................................................................................8

1.93    Professional Fee Claims ......................................................................9

1.94    Professional Fee Order ........................................................................9

1.95    Pro Rata ...............................................................................................9

1.96    Registration Rights Agreement ...........................................................9

1.97    Reorganized Debtors ...........................................................................9

1.98    Reorganized GPH ................................................................................9

1.99    Sale Order ............................................................................................9

1.100   Schedules ..............................................................................................9

1.101   Secured Claim ......................................................................................9

1.102 Secured Creditor Share ...................................................................................9

1.103 Secured Creditor Trust Interest .........................................................................9

1.104 Secured Tax Claim .........................................................................................9

1.105 Services Payable ..........................................................................................10

1.106 Shareholders Agreement ................................................................................10

1.107 Tax Code ..................................................................................................10

1.108 Trust Cash .................................................................................................10

1.109 U.S. Trustee ...............................................................................................10

1.110 Unexpired Lease .........................................................................................10

1.111 Unliquidated Claim ......................................................................................10

1.112 Unsecured Creditor Share ..............................................................................10

1.113 Unsecured Trust Interests ..............................................................................10

1.114 Voting Deadline .........................................................................................10

B.      Interpretation; Application of Definitions and Rules of Construction. ..............................10

ARTICLE II PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, 503(B)(9) ADMINISTRATIVE CLAIMS,  BUYER ASSUMED LIABILITIES AND PROFESSIONAL FEE CLAIMS ..................................................................................................11

2.1      Administrative Expense Claims. ..........................................................................11

2.2      503(b)(9) Administrative Claims............................................................................11

2.3      Buyer Assumed Liabilities ..................................................................................11

2.4      Professional Fee Claims. ...................................................................................12

ARTICLE III CLASSIFICATION OF CLAIMS AND OLD COMMON INTERESTS, IMPAIRMENT AND VOTING ..................................................................................................13

3.1      Substantive Consolidation of the Debtors. ..............................................................13

3.2      Class Identification. ........................................................................................14

ARTICLE IV PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS ...........14

4.1      Secured Tax Claims (Class 1).............................................................................14

4.2      Other Secured Claims (Class 2)...........................................................................14

4.3      Priority Tax Claims (Class 3). .............................................................................15

4.4      Priority Claims (Class 4). ..................................................................................15

4.5      Prepetition Credit Agreement Secured Claims (Class 5)...............................................15

4.6      General Unsecured Claims (Class 6).....................................................................15

4.7      Old Common Interests (Class 7)...........................................................................15

ARTICLE V MEANS OF IMPLEMENTATION ........................................................................16

5.1    Substantive Consolidation. ...........................................................................16

5.2    Compromise of Controversies. ....................................................................16

5.3    Settlement of Claims. ...................................................................................17

5.4    Cancellation of Existing Securities and Agreements...................................17

5.5    Issuance of New Common Stock...................................................................17

5.6    Liquidating Trust .........................................................................................17

5.7    Corporate Existence......................................................................................19

5.8    Vesting of Assets in the Reorganized Debtors. ...........................................19

5.9    Corporate Action. .........................................................................................20

5.10   Directors and Officers of the Reorganized Debtors.....................................20

5.11   Effectuating Documents; Further Transactions. ..........................................20

5.12   Operations of the Debtors Between the Confirmation Date and the Effective Date.20

5.13   Terms of Injunctions or Stays.......................................................................20

ARTICLE VI PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS ................................21

6.1    Voting of Claims. .........................................................................................21

6.2    Allowance of Prepetition Credit Agreement Claims. ..................................21

6.3    Nonconsensual Confirmation. ......................................................................21

6.4    Timing and Calculation of Amounts to Be Distributed................................21

6.5    Disbursing Agent. .........................................................................................21

6.6    Rights and Powers of Disbursing Agent.......................................................22

6.7    Expenses of the Disbursing Agent................................................................22

6.8    Distributions on Account of Claims Allowed After the Effective Date. ..................22

6.9    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ..............24

6.10   Compliance with Tax Requirements/Allocations. ........................................25

6.11   Manner of Payment. .....................................................................................26

6.12   Setoffs and Recoupment. ..............................................................................26

6.13   Release of Liens............................................................................................26

6.14   Claims Paid or Payable by Third Parties. ....................................................26

6.15   Allocation of Plan Distributions Between Principal and Interest. ...........................27

ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED AND DISPUTED CLAIMS...............................................................................................27

7.1    Objections......................................................................................................27

7.2    No Distributions Pending Allowance. ..........................................................27

7.3    Allowance of Claims and Interests. ..............................................................28

7.4    Estimation of Claims. ...................................................................................... 28

7.5    Interest. ............................................................................................................ 28

ARTICLE VIII EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................... 28

8.1    Assumption or Rejection of Executory Contracts and Unexpired Leases. ............... 28

8.2    Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases. .................................................................................................................. 29

8.3    Cure of Defaults. .............................................................................................. 29

8.4    Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. ...................................................................................................... 29

8.5    Modifications, Amendments, Supplements, Restatements or Other Agreements. .... 29

8.6    Indemnification Obligations. ............................................................................ 30

8.7    Insurance Policies. ........................................................................................... 30

8.8    Reservation of Rights. ..................................................................................... 30

ARTICLE IX CORPORATE GOVERNANCE AND MANAGEMENT  OF THE REORGANIZED DEBTORS ................................................................................................................ 30

9.1    General. ........................................................................................................... 30

9.2    New Organizational Documents. ...................................................................... 30

9.3    New Board of the Reorganized Debtors. .......................................................... 31

9.4    Officers of Reorganized GPH. ......................................................................... 31

ARTICLE X CONDITIONS PRECEDENT TO CONFIRMATION  AND CONSUMMATION OF THE PLAN. .............................................................................................................. 31

10.1    Conditions Precedent to Confirmation. ............................................................ 31

10.2    Conditions Precedent to the Effective Date. ..................................................... 32

10.3    Waiver of Conditions. ...................................................................................... 32

10.4    Satisfaction of Conditions. ............................................................................... 32

ARTICLE XI EFFECT OF CONFIRMATION ................................................................................ 32

11.1    Binding Effect. ................................................................................................ 32

11.2    Discharge of Claims and Termination of Old Common Interests. ......................... 33

11.3    Discharge. ........................................................................................................ 33

11.4    Injunction or Stay. ........................................................................................... 33

11.5    Injunction Against Interference With the Plan. ................................................. 34

11.6    Terms of Injunction or Stay. ............................................................................ 34

11.7    Exculpation. ..................................................................................................... 34

11.8    Releases. .......................................................................................................... 34

11.9    Avoidance Actions/Objections. ....................................................................... 35

ARTICLE XII RETENTION OF JURISDICTION..............................................................................35

    12.1   Jurisdiction........................................................................................................................35

ARTICLE XIII MISCELLANEOUS PROVISIONS ........................................................................36

    13.1   Immediate Binding Effect...................................................................................................36

    13.2   Additional Documents........................................................................................................36

    13.3   Preservation of Causes of Action. ......................................................................................37

    13.4   Preservation of Avoidance Actions. ...................................................................................37

    13.5   Section 1145 Exemption.....................................................................................................38

    13.6   Section 1146 Exemption.....................................................................................................38

    13.7   Payment of Statutory Fees. ................................................................................................38

    13.8   Modification and Amendments. .........................................................................................38

    13.9   Effect of Confirmation on Modifications. .........................................................................39

    13.10  Successors and Assigns. .....................................................................................................39

    13.11  Service of Documents.........................................................................................................39

    13.12  Entire Agreement...............................................................................................................39

    13.13  Exhibits..............................................................................................................................39

    13.14  Nonseverability of Plan Provisions. ..................................................................................39

    13.15  Votes Solicited in Good Faith............................................................................................40

    13.16  Closing of Chapter 11 Cases..............................................................................................40

    13.17  Waiver or Estoppel. ...........................................................................................................40

    13.18  Conflicts.............................................................................................................................40

    13.19  Post-Confirmation Reporting.............................................................................................40

## EXHIBITS

EXHIBIT A    Liquidating Trust Agreement

EXHIBIT B    Causes of Action

EXHIBIT C    New By Laws

EXHIBIT D    New Certificate of Incorporation

EXHIBIT E    New Board of Directors

# DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Graphics Properties Holdings, Inc. (f/k/a Silicon Graphics, Inc.), GPH of Manhattan, Inc. (f/k/a Silicon Graphics of Manhattan, Inc.), GPH Research, L.L.C. (f/k/a Cray Research, L.L.C.), GPH Real Estate, Inc. (f/k/a Silicon Graphics Real Estate, Inc.), GPH World Trade Corporation (f/k/a Silicon Graphics World Trade Corporation), GPH Studio, Inc. (f/k/a Silicon Studio, Inc.), GPH Research America Latina Ltd. (f/k/a Cray Research America Latina Ltd.), GPH Research (Eastern Europe) Ltd. (f/k/a Cray Research (Eastern Europe) Ltd.), GPH Research (India) Ltd. (f/k/a Cray Research (India) Ltd.), GPH Research International, Inc. (f/k/a Cray Research International, Inc.), GPH Financial Corporation (f/k/a Cray Financial Corporation), GPH Asia/Pacific, Inc. (f/k/a Cray Asia/Pacific, Inc.), Paragraph International, Inc. and WTI Development, Inc. hereby respectfully propose the following joint plan of reorganization under chapter 11 of the Bankruptcy Code:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

### A.    Definitions.

The following terms used herein shall have the respective meanings set forth below:

1.1    ***503(b)(9) Administrative Claim*** means a Claim for the value of any goods received by the Debtors within 20 days before the date of commencement of a case under the Bankruptcy Code in which the goods have been sold to a Debtor in the ordinary course of such Debtor's business, pursuant to section 503(b)(9) of the Bankruptcy Code.

1.2    ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 330, 503(b) (but excluding 503(b)(9) Administrative Claims, Buyer Assumed Liabilities, Professional Fee Claims and Intercompany Claims), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates; (b) any actual and necessary costs and expenses of operating the Debtors' businesses; (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Chapter 11 Cases and (d) any compensation for professional services rendered and reimbursement of expenses incurred.  Any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with section 13.6 of the Plan.

1.3    ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4    ***Allowed*** means, with reference to any Claim, such Claim or portion thereof, (a) as to which no objection or request for estimation has been filed, no litigation has commenced, and the debtors otherwise have assented to the validity thereof (and as to which a proof of claim has been properly and timely filed to the extent required by the Plan or any order of the Bankruptcy Court); (b) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn or decided by a Final Order; or (c) that is allowed (i) pursuant to the terms of a Final Order, (ii) pursuant to the terms of an agreement between the holder of such Claim and the Debtors (or Reorganized Debtors, as the case may be) or (iii) under the terms of the Plan.  Unless otherwise specified in the Plan or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Claim from and after the Commencement Date.

1.5     ***Asset Purchase Agreement*** means the Asset Purchase Agreement by and among Graphics Properties Holdings, Inc. (f/k/a Silicon Graphics, Inc.), each of the subsidiaries of Graphics Properties Holdings, Inc. listed on Schedule I thereto and Rackable Systems, Inc. (n/k/a Silicon Graphics International Corp.), dated as of March 31, 2009, as amended pursuant to the Amendment to Asset Purchase Agreement entered into as of April 30, 2009, and approved by the Order (A) Approving Asset Purchase Agreement Between the Debtors and the Successful Bidder; (B) Authorizing the Sale of All or Substantially All of the Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith, entered by the Bankruptcy Court on April 30, 2009.

1.6     ***Assumed Executory Contract and Unexpired Lease List*** means the list (as may be amended), as determined by the Debtors or Reorganized Debtors with the consent of the Prepetition Lenders, of Executory Contracts and Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the provisions of Article VIII of this Plan, which list shall be filed no less than 10 days prior to the Confirmation Hearing.

1.7     ***ATI Litigation*** means that litigation captioned as Silicon Graphics, Inc. v. ATI Technologies, Inc., ATI Technologies ULC, and Advanced MicroDevices, Inc., pending before the United States Court of Appeals for the Federal Circuit, Case No. 2008-1334,-1353, on appeal from the United States District Court for the Western District of Wisconsin, Case No. 06-CV-0611.

1.8     ***Available Cash*** means all available net Cash income plus all net Cash proceeds from the liquidation of the Liquidating Trust Assets (including as Cash for this purpose, all permissible investments described in Section 5.07 of the Liquidating Trust Agreement).

1.9     ***Avoidance Actions*** means any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors or their estates under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, actions, settlements or remedies under sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

1.10    ***Ballot*** means the form distributed to each holder of an impaired Claim or Old Common Interest that is entitled to vote to accept or reject the Plan on which is to be indicated acceptance or rejection of the Plan.

1.11    ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.12    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York or any other court of the United States having jurisdiction over the Chapter 11 Cases.

1.13    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time.

1.14    ***Beneficial Interests*** means the beneficial interests in the Liquidating Trust.

1.15    ***Beneficiaries*** means holders of Allowed Prepetition Credit Agreement Secured Claims, Allowed Priority Tax Claims, Allowed Priority Claims and Allowed General Unsecured Claims.

1.16    ***Business Day*** means any day other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006).

1.17    ***Buyer*** means Silicon Graphics International Corp. (f/k/a Rackable Systems, Inc.) and its subsidiary, SGI International, Inc.

1.18    ***Buyer Assumed Liabilities*** means those liabilities assumed by Buyer pursuant to the Asset Purchase Agreement and the Sale Order.

1.19    ***Cash*** means cash and cash equivalents, including wire transfers or immediately available funds, certified checks, money orders, negotiable checks, other readily marketable direct obligations of the United States of America and other similar items.

1.20    ***Causes of Action*** means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including, but not limited to, all claims and any avoidance, recovery, subordination or other actions against insiders and/or any other entities under the Bankruptcy Code, including Avoidance Actions) of any of the Debtors, the Debtors in Possession, and/or the Estates (including, but not limited to, those actions set forth in the Exhibit B hereto) that are or may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date against any entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

1.21    ***Chapter 11 Cases*** means the jointly administered cases commenced by the Debtors under chapter 11 of the Bankruptcy Code.

1.22    ***Claim*** means a "claim" (as that term is defined in section 101(5) of the Bankruptcy Code) against a Debtor.

1.23    ***Claims Objection Bar Date*** means, with respect to any Claim, the 120th day following the latest of the Effective Date, the date such Claim is filed and such later date as may be established from time to time by the Bankruptcy Court as the last date for filing objections to such Claim.

1.24    ***Class*** means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code.

1.25    ***Closing Date*** shall have the meaning ascribed to such term in the Asset Purchase Agreement and the Sale Order.

1.26    ***Collateral*** means any property or interest in property of the estates of the Debtors subject to a Lien, charge or other encumbrance to secure the payment or performance of a Claim, which Lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.27    ***Commencement Date*** means April 1, 2009, the date on which the Debtors commenced their Chapter 11 Cases.

1.28    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.29     ***Confirmation Hearing*** means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.30     ***Confirmation Order*** means the order or orders of the Bankruptcy Court confirming the Plan.

1.31     ***Consummation*** means the occurrence of the Effective Date.

1.32     ***Contingent Claim*** means any Claim, the liability for which attaches or is dependent upon the occurrence or happening of, or is triggered by, an event, which event has not yet occurred, happened or been triggered as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.33     ***Debtors*** means Graphics Properties Holdings, Inc. (f/k/a Silicon Graphics, Inc.), GPH of Manhattan, Inc. (f/k/a Silicon Graphics of Manhattan, Inc.), GPH Research, L.L.C. (f/k/a Cray Research, L.L.C.), GPH Real Estate, Inc. (f/k/a Silicon Graphics Real Estate, Inc.), GPH World Trade Corporation (f/k/a Silicon Graphics World Trade Corporation), GPH Studio, Inc. (f/k/a Silicon Studio, Inc.), GPH Research America Latina Ltd. (f/k/a Cray Research America Latina Ltd.), GPH Research (Eastern Europe) Ltd. (f/k/a Cray Research (Eastern Europe) Ltd.), GPH Research (India) Ltd. (f/k/a Cray Research (India) Ltd.), GPH Research International, Inc. (f/k/a Cray Research International, Inc.), GPH Financial Corporation (f/k/a Cray Financial Corporation), GPH Asia/Pacific, Inc. (f/k/a Cray Asia/Pacific, Inc.), Paragraph International, Inc. and WTI Development, Inc.

1.34     ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases under sections 1107(a) and 1108 of the Bankruptcy Code.

1.35     ***Disbursing Agent*** means, as to distributions to be made on the Effective Date, the Debtors, and as to distributions to be made after the Effective Date, Reorganized GPH or, as applicable, the Liquidating Trustee or its designee.

1.36     ***Disclosure Statement*** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.37     ***Disputed*** means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been timely filed; (b) as to which a Debtor or Reorganized Debtor has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed by a Debtor or a Reorganized Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

1.38     ***Disputed Claims Reserve*** means the reserve established by the Reorganized Debtors and maintained by the Liquidating Trustee that is comprised of the Disputed General Unsecured Claims Reserve, the Disputed Priority Claims Reserve and the Disputed Priority Tax Claims Reserve.

1.39     ***Disputed General Unsecured Claim*** means any General Unsecured Claim that, as of the date of determination, is a Disputed Claim.

1.40     **Disputed Priority Claim** means any Priority Claim that, as of the date of determination, is a Disputed Claim.

1.41     **Disputed Priority Tax Claim** means any Priority Tax Claim that, as of the date of determination, is a Disputed Claim.

1.42     **Disputed General Unsecured Claims Reserve** means the reserve established and maintained by the Liquidating Trustee to hold the General Unsecured Claim Trust Interests to be distributed, as applicable, to Holders of Allowed General Unsecured Claims pending the resolution of Disputed General Unsecured Claims in accordance with the terms of Article IV hereof.

1.43     **Disputed Priority Claims Reserve** means the reserve established and maintained by the Liquidating Trustee to hold the Priority Claims Trust Interests to be distributed, as applicable, to Holders of Allowed Priority Claims pending the resolution of Disputed Priority Claims in accordance with the terms of Article VI hereof.

1.44     **Disputed Priority Tax Claims Reserve** means the reserve established and maintained by the Liquidating Trustee to hold the Priority Tax Claims Trust Interests to be distributed, as applicable, to Holders of Allowed Priority Tax Claims pending the resolution of Disputed Priority Tax Claims in accordance with the terms of Article VI hereof.

1.45     **Distribution Record Date** means as to any distribution under the Plan, 5:00 p.m. prevailing Eastern Time on the 15th day prior to such distribution.

1.46     **Effective Date** means a Business Day selected by the Debtors, with the consent of the Prepetition Lenders, on or after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect and (b) the conditions precedent to the effectiveness of the Plan specified in section 10.2 of the Plan shall have been satisfied or waived as provided in section 10.3 of the Plan.

1.47     **Entity** means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

1.48     **Equity Interest** means any (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors (including Old Common Stock) together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company, or similar interest in a Debtor; provided, however, that Equity Interest does not include any Intercompany Interest.

1.49     **Equity Security** means any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

1.50     **Estate** means, with respect to each Debtor, the estate created in the Chapter 11 Cases for such Debtor, by operation of Bankruptcy Code section 541.

1.51     **Executory Contract and/or Unexpired Lease** means a contract or lease to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.52     **Final Distribution Date** means a day selected by the Reorganized Debtors in their sole discretion that is after the Initial Distribution Date and is no earlier than 20 calendar days after the date on which all Disputed Claims have become either Allowed Claims or Disallowed Claims.

1.53    **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and (ii) the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be filed relating to such order shall not prevent such order from being a Final Order.

1.54    **General Unsecured Claim** means any Claim against the Debtors other than an Administrative Expense Claim, Priority Tax Claim, Priority Claim, Secured Tax Claim, Other Secured Claim, Prepetition Credit Agreement Secured Claim or Intercompany Claim, and shall include the Prepetition Credit Agreement Unsecured Claim.

1.55    **General Unsecured Claim Trust Interests** means the Unsecured Creditor Share of the Holders of Allowed General Unsecured Claims in the Liquidating Trust, the treatment of which is described in Article IV of this Plan.

1.56    **Goods Payable** means any trade account payable that was incurred in respect of goods received by the Debtors between the 20th  day prior to the Commencement Date and the Closing Date.

1.57    **Graphics Properties** means Graphics Properties Holdings, Inc. (f/k/a Silicon Graphics, Inc.).

1.58    **Holdback Amount** means the aggregate holdback of those Professional fees billed to the Debtors during the Chapter 11 Cases that are held back pursuant to the Professional Fee Order or any other order of the Bankruptcy Court, which amount is to be deposited in the Holdback Escrow Account as of the Effective Date.  The Holdback Amount shall not be considered property of the Debtors or the Reorganized Debtors.

1.59    **Holdback Escrow Account** means the escrow account established by Reorganized GPH into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Fee Claims to the extent not previously paid or disallowed.

1.60    **Holder** means the holder of a Claim or Old Common Interest.

1.61    **Initial Distribution Date** means the Effective Date or a date selected by the Reorganized Debtors in their sole discretion that is as soon as reasonably practicable, but not later than, 60 calendar days after, the Effective Date.

1.62    **Intercompany Claim** means any Claim against any Debtor or Non-Debtor Subsidiary held by another Debtor or Non-Debtor Subsidiary.

1.63    **Intercompany Interest** means an Equity Interest in a Debtor held by another Debtor or an Equity Interest in a Debtor held by an Affiliate of a Debtor.

1.64 ***Interim Distribution Date*** means the date that is 120 calendar days after the Initial Distribution Date or the most recent Interim Distribution Date thereafter, with such periodic Interim Distribution Dates occurring not less than once per year and occurring until the Final Distribution Date has occurred.

1.65 ***Lien*** means any lien, security interest, or other charge or encumbrance of any kind, or any other type of encumbrance on title to real property.

1.66 ***Liquidating Trust*** means the trust contemplated by the Liquidating Trust Agreement that will take title to all of the Liquidating Trust Assets, subject to the terms of the Plan, as of the Effective Date.

1.67 ***Liquidating Trust Agreement*** means an agreement substantially in the form attached hereto as Exhibit A, as amended from time to time with the consent of the Prepetition Lenders prior to the Effective Date.

1.68 ***Liquidating Trust Assets*** means all of the assets of the Estates set forth on Schedule I hereto.

1.69 ***Liquidating Trustee*** means the person appointed by the Debtors to administer the Liquidating Trust.

1.70 ***Local Bankruptcy Rules*** means the Local Bankruptcy Rules for the Southern District of New York, as amended from time to time.

1.71 ***New Board*** means the initial board of directors of Reorganized GPH.

1.72 ***New By-Laws*** means the form of by-laws of Reorganized GPH, which form is attached hereto as Exhibit C.

1.73 ***New Certificate of Incorporation*** means the form of the certificate of incorporation of Reorganized GPH, which form is attached hereto as Exhibit D.

1.74 ***New Common Stock*** means [●] shares of common stock of Reorganized GPH authorized pursuant to the Plan, par value $.001 per share.

1.75 ***New Organizational Documents*** means, collectively: (a) new, amended and/or restated certificates of incorporation or limited partnership certificates or certificates of formation that may be necessary or appropriate for Reorganized GPH to file in its state of organization and (b) by-laws, operating agreements, partnership agreements and any other corporate, constituent or organizational documents that may be necessary or appropriate to adopt or file in connection with the incorporation or formation of Reorganized GPH.

1.76 ***Non-Debtor Subsidiary*** means any direct or indirect Subsidiary of Graphics Properties that is not a Debtor.

1.77 ***Old Common Stock*** means all of the issued and outstanding shares of common stock of Graphics Properties.

1.78 ***Old Common Interests*** means all shares of Old Common Stock and all options, warrants or rights, contractual or otherwise to acquire shares of Old Common Stock.

1.79    ***Other Secured Claim*** means a Secured Claim other than a Secured Tax Claim or a Prepetition Credit Agreement Secured Claim.

1.80    ***Person*** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

1.81    ***Plan*** means this Joint Plan of Reorganization, including, without limitation, the exhibits and schedules hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.82    ***Prepetition Agent*** means Wilmington Trust FSB, or any successor thereto, as administrative agent under the Prepetition Credit Agreement.

1.83    ***Prepetition Credit Agreement*** means that certain Senior Secured Credit Agreement, dated as of October 17, 2006, among Graphics Properties (f/k/a Silicon Graphics, Inc.), SGI Federal and GPH World Trade Corporation (f/k/a SGI World Trade Corporation), as borrowers, the lenders party thereto, Wilmington Trust FSB as Administrative Agent and Collateral Agent, as the same may have been amended or modified from time to time prior to the Commencement Date.

1.84    ***Prepetition Credit Agreement Claims*** means the Prepetition Credit Agreement Secured Claim and the Prepetition Credit Agreement Unsecured Claim.

1.85    ***Prepetition Credit Agreement Secured Claim*** means the secured Claim in the amount of $[●] arising under the Prepetition Credit Agreement.

1.86    ***Prepetition Credit Agreement Unsecured Claim*** means that portion of the Prepetition Credit Agreement Claims that is not a Prepetition Credit Agreement Secured Claim.

1.87    ***Prepetition Lenders*** means the lenders from time to time under the Prepetition Credit Agreement.

1.88    ***Priority Claims*** means all Claims against the Debtors accorded priority in right of payment under Bankruptcy Code section 507(a), other than Administrative Expense Claims and Priority Tax Claims.

1.89    ***Priority Claims Trust Interests*** means the Unsecured Creditor Share of the Holders of Allowed Priority Claims in the Liquidating Trust, the treatment of which is described in Article IV of this Plan.

1.90    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.91    ***Priority Tax Claim Trust Interests*** means the Unsecured Creditor Share of the Holders of Allowed Priority Tax Claims in the Liquidating Trust, the treatment of which is described in Article IV of this Plan.

1.92    ***Professional*** means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of

the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.93   ***Professional Fee Claims*** means all Administrative Expense Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals (to the extent allowed under Section 328, 330, 331, 363 or 503 of the Bankruptcy Code) through the Effective Date.

1.94   ***Professional Fee Order*** means that certain order of the Bankruptcy Court entered on April 24, 2009, establishing procedures for interim compensation and reimbursement of expenses of Professionals.

1.95   ***Pro Rata*** means, in the appropriate context, the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

1.96   ***Registration Rights Agreement*** means the Registration Rights Agreement, if any, dated as of the Effective Date, among certain holders of New Common Stock and Reorganized GPH.

1.97   ***Reorganized Debtors*** means the Debtors, in each case, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.98   ***Reorganized GPH*** means Graphics Properties, as reorganized under and pursuant to the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.99   ***Sale Order*** means the Order (A) Approving Asset Purchase Agreement Between the Debtors and the Successful Bidder; (B) Authorizing the Sale of All or Substantially All of the Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection Therewith [Docket No. 292], entered by the Bankruptcy Court on April 30, 2009.

1.100   ***Schedules*** means, collectively, the schedules of assets and liabilities, schedules of current income and expenditures, schedules of executory contracts and unexpired leases and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007 and the Official Bankruptcy Forms in the Chapter 11 Cases, as may have been amended or supplemented through the Confirmation Date pursuant to Bankruptcy Rule 1007.

1.101   ***Secured Claim*** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.102   ***Secured Creditor Share*** means  [●]% of the Beneficial Interests.

1.103   ***Secured Creditor Trust Interest*** means the Secured Creditor Share of the Holders of Allowed Prepetition Credit Agreement Secured Claims in the Liquidating Trust, the treatment of which is described in Article IV of this Plan.

1.104   ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code

(determined irrespective of any time limitations therein and including any related Secured Claim for penalties).

1.105 **_Services Payable_** any trade account payable that is not a Goods Payable and was incurred by the Debtors between the Commencement Date and the Closing Date.

1.106 **_Shareholders Agreement_** means the shareholders agreement, if any, dated as of the Effective Date, among the holders of 5% or more of the New Common Stock.

1.107 **_Tax Code_** means the Internal Revenue Code of 1986, as amended.

1.108 **_Trust Cash_** means $250,000 in Cash that shall be included in the Liquidating Trust Assets.

1.109 **_U.S. Trustee_** means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the Southern District of New York.

1.110 **_Unexpired Lease_** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.111 **_Unliquidated Claim_** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law or otherwise, as of the date on which such Claim is asserted or sought to be estimated.

1.112 **_Unsecured Creditor Share_** means [●]% of the Beneficial Interests.

1.113 **_Unsecured Trust Interests_** means the Priority Claim Trust Interests, the Priority Tax Claim Trust Interests and the General Unsecured Claim Trust Interests.

1.114 **_Voting Deadline_** means 5:00 p.m. prevailing Eastern Time on [●], the date and time fixed by the Bankruptcy Court as the last day for Holders of Claims to vote to accept or reject the Plan.

**B.     Interpretation; Application of Definitions and Rules of Construction.**

1.     For purposes herein:  i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; iii) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; v) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and viii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Fed. R. Bankr. P. 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.      All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

4.      If any inconsistency between the Plan and the Disclosure Statement exists, the provisions of the Plan shall control.  If any inconsistency between the Plan and the Liquidating Trust Agreement exists, the provisions of the Liquidating Trust Agreement shall control.

5.      All Exhibits and schedules to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when filed.

## ARTICLE II

### PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS, 503(B)(9) ADMINISTRATIVE CLAIMS, BUYER ASSUMED LIABILITIES AND PROFESSIONAL FEE CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, 503(b)(9) Administrative Claims, Buyer Assumed Liabilities and Professional Fee Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereto.

2.1      *Administrative Expense Claims.*

Except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full and performed by the Debtors or Reorganized Debtors, as the case may be, in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

2.2      *503(b)(9) Administrative Claims*

All 503(b)(9) Administrative Claims shall be paid in full by Buyer pursuant to the Asset Purchase Agreement and the Sale Order.

2.3      *Buyer Assumed Liabilities*

All Claims assumed by Buyer pursuant to Section 2.3 of the Asset Purchase Agreement shall be paid in full by Buyer, pursuant to the Asset Purchase Agreement and the Sale Order, which Buyer Assumed Liabilities shall include:

(a)      the trade accounts payable (whether or not invoiced) that: (i) existed as of March 27, 2009 (the date as of which Schedule 2.3 to the Asset Purchase Agreement was created) and are identified or otherwise reflected in the amounts set forth on Schedule 2.3 of the Asset Purchase Agreement; or (ii)

were incurred by the Selling Entities[1] or invoiced to the Selling Entities between March 27, 2009 and the Closing in the ordinary course of business other than fees and disbursements for Professional Fee Clams;

(b) the obligations of the Selling Entities under the Assumed Agreements to the extent such obligations: (i) arise after the Closing; (ii) do not arise from or relate to any breach by the Selling Entities of any provision of any of such Assumed Agreements; (iii) do not arise from or relate to any event, circumstance or condition occurring or existing on or prior to the Closing Date that, with notice or lapse of time, would constitute or result in a breach of any of such Assumed Agreements; and (iv) are ascertainable (in nature and amount) solely by reference to the express terms of such Assumed Agreements;

(c) the accounts payable (or other amounts payable) and other intercompany obligations of the Selling Entities owed to the Acquired Subsidiaries (and the subsidiaries of the Acquired Subsidiaries);

(d) the liabilities to be assumed by the Buyer pursuant to Section 7.7 of the Asset Purchase Agreement;

(e) all Cure Payments;

(f) Transfer Taxes and other Taxes payable by the Buyer pursuant to Section 7.8 of the Asset Purchase Agreement;

(g) Goods Payables; and

(h) any Services Payable, to the extent the aggregate amount of all Services Payables that are Assumed Liabilities is less than $3,000,000 or if the incurring of such Services Payable is approved by the Buyer), in each case by providing written notice of such designation to the Seller.]

2.4 ***Professional Fee Claims.***

(a) <u>Final Fee Applications</u>

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on Reorganized GPH no later than 60 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(b) <u>Payment of Interim Amounts</u>

Subject to the Holdback Amount, on the Effective Date, the Debtors or Reorganized Debtors shall pay all amounts owing to Professionals for all outstanding amounts payable relating to prior periods through the Effective Date. To receive payment on the Effective Date for unbilled fees and expenses incurred through such date, the Professionals shall reasonably estimate fees and expenses due for periods that will not have been billed as of the Effective Date and shall deliver such estimate to the Debtors and the United States Trustee prior to the Effective Date. The Debtors or Reorganized Debtors, as applicable, shall pay the Professionals' reasonably estimated amount of such fees and expenses as soon as reasonably practicable after receiving the estimate, but in no event prior to the Effective Date. Within forty-five (45)

---

[1] All terms not otherwise defined in this Section 2.3 shall have the meaning ascribed to them in the Asset Purchase Agreement.

days after the Effective Date, a Professional receiving payment for the estimated period shall submit a detailed invoice covering such period in the manner and providing the detail as set forth in the Professional Fee Order. If the estimated payment received by any Professional exceeds the actual fees and expenses for such period, as ultimately approved by the Bankruptcy Court in connection with the relevant final fee application, such excess amount will be credited against the Holdback Amount for such Professional or, if the award of the Holdback Amount for such matter is insufficient, disgorged by such Professional within 10 days after the issuance of the Order approving the relevant final fee application. If the estimated payment received by any Professional is lower than the actual fees and expenses for such period as ultimately approved by the Bankruptcy Court in connection with the relevant final fee application, the difference between the amount approved and the estimated payment shall promptly be paid to such Professional.

(c)     Holdback Amount

On the Effective Date, the Debtors or the Reorganized Debtors shall fund the Holdback Escrow Account with Cash equal to the aggregate Holdback Amount for all Professionals. The Reorganized Debtors shall maintain the Holdback Escrow Account in trust for the Professionals with respect to whom fees have been held back pursuant to the Professional Fee Order. Such funds shall not be considered property of the Debtors, or the Reorganized Debtors. The remaining Holdback Amount owing to each Professional shall be paid to such Professional by Reorganized GPH from the Holdback Escrow Account and to the extent that such Professional's Professional Fee Claim is finally approved by the Bankruptcy Court. When all approved Professional Fee Claims have been paid in full, amounts remaining in the Holdback Escrow Account, if any, shall be released from the Holdback Escrow Account.

(d)     Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court

**ARTICLE III**

**CLASSIFICATION OF CLAIMS AND**
**OLD COMMON INTERESTS, IMPAIRMENT AND VOTING**

3.1     *Substantive Consolidation of the Debtors.*

Pursuant to Article V, the Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with Confirmation and Consummation. As a result of the substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors.

3.2     *Class Identification.*

The following table designates the classes of Claims against and Equity Interests in the Debtors and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Secured Tax Claims | Unimpaired | No (deemed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Priority Tax Claims | Impaired | Yes |
| Class 4 | Priority Claims | Impaired | Yes |
| Class 5 | Prepetition Credit Agreement Secured Claim | Impaired | Yes |
| Class 6 | General Unsecured Claims | Impaired | Yes |
| Class 7 | Old Common Interests | Impaired | No (deemed to reject) |

**ARTICLE IV**

**PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS**

4.1     *Secured Tax Claims (Class 1).*

(a)     <u>Impairment and Voting</u>.  Class 1 is unimpaired by the Plan.  Each holder of an Allowed Secured Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Except to the extent that a holder of an Allowed Secured Tax Claim agrees to a different treatment, each holder of an Allowed Secured Tax Claim shall receive, at the sole option of the Debtors or the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Secured Tax Claim or (b) commencing on the Effective Date and continuing over a period not exceeding five (5) years from and after the Commencement Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the sole option of the Debtors or Reorganized Debtors to prepay the entire amount of the Allowed Secured Tax Claim.

4.2     *Other Secured Claims (Class 2).*

(a)     <u>Impairment and Voting</u>.  Class 2 is unimpaired by the Plan.  Each holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan and it not entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, at the sole option of the Debtors or the Reorganized Debtors, (a) each holder of an Allowed Other Secured Claim shall receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, on the later of the Effective Date and the date such Allowed Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable or

(b) each holder of an Allowed Other Secured Claim shall receive the Collateral securing its Allowed Other Secured Claim in full and complete satisfaction of such Allowed Other Secured Claim on the later of the Effective Date and the date such Allowed Other Secured Claim becomes an Allowed Other Secured Claim, or as soon thereafter as is practicable.

4.3 *Priority Tax Claims (Class 3).*

(a) <u>Impairment and Voting</u>. Class 3 is impaired by the Plan. Each holder of an Allowed Priority Tax Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of the Priority Tax Claim Trust Interests.

4.4 *Priority Claims (Class 4).*

(a) <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Each holder of an Allowed Priority Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Except to the extent that a holder of an Allowed Priority Claim agrees to a different treatment, each holder of an Allowed Priority Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of the Priority Claim Trust Interests.

4.5 *Prepetition Credit Agreement Secured Claims (Class 5).*

(a) <u>Impairment and Voting</u>. Class 5 is impaired by the Plan. Each holder of a Prepetition Credit Agreement Secured Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Prepetition Credit Agreement Secured Claim shall receive, on the Effective Date or as soon as thereafter is practicable, its Pro Rata share of the New Common Stock and the Secured Creditor Trust Interests.

4.6 *General Unsecured Claims (Class 6).*

(a) <u>Impairment and Voting</u>. Class 6 is impaired by the Plan. Each holder of an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata share of the General Unsecured Claim Trust Interests.

4.7 *Old Common Interests (Class 7).*

(a) <u>Impairment and Voting</u>. Class 7 is impaired by the Plan. Each holder of an Old Common Interest is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. On the Effective Date, the Old Common Interests shall be cancelled, extinguished and discharged and the holders of Old Common Interests shall not be entitled to, and shall not receive or retain, any property or interest in property on account of such Old Common Interests under the Plan.

# ARTICLE V

# MEANS OF IMPLEMENTATION

5.1     *Substantive Consolidation.*

On the Effective Date, the Debtors, for Plan purposes only, shall be deemed merged into Graphics Properties, and (i) all assets and all liabilities of the Debtors shall be deemed merged into Graphics Properties, (ii) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and canceled, (iii) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (iv) all joint obligations of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Debtors, and (v) each General Unsecured Claim filed in the Chapter 11 Cases of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date.

Entry of the Confirmation Order will constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the deemed substantive consolidation of the Chapter 11 Cases for purposes of voting on, confirmation of, and distribution under the Plan.

In addition, on the Effective Date each Debtor that holds an Intercompany Claim against a direct subsidiary shall contribute such Intercompany Claim to the capital of such direct subsidiary. In the event the obligor under the Intercompany Claim is an indirect subsidiary, the holder shall contribute such Intercompany Claim to the capital of the direct subsidiary through which such holder indirectly controls such obligor. Such direct subsidiary (and, to the extent applicable, each of its direct or indirect subsidiaries to which the Intercompany Claim is then contributed) shall, in turn, be treated as the holder of such Intercompany Claim and shall contribute such Intercompany Claim to the capital of its direct subsidiaries in accordance with the immediately preceding two sentences. An Intercompany Claim shall continue to be contributed to the capital of subsidiaries until it is contributed to the capital of the subsidiary that is the obligor under such Claim, thereby eliminating such Intercompany Claim. On the Effective Date, all other Intercompany Claims (including without limitation Intercompany Claims that a Debtor holds against a direct or indirect parent corporation) shall be eliminated and discharged. In no event shall Distributions be made hereunder on account of any Intercompany Claims.

Notwithstanding the foregoing, the deemed consolidation and substantive consolidation (each for Plan purposes only) shall not (other than for purposes related to funding distributions under the Plan) affect (w) the legal and organizational structure of the Debtors, (x) pre- and post-Commencement Date guaranties, liens, and security interests that were required to be maintained, pursuant to the Plan, (y) distributions out of any insurance policies or proceeds of such policies, and (z) the tax treatment of the Debtors. Furthermore, notwithstanding the foregoing, the deemed consolidation and substantive consolidation (each for Plan purposes only), shall not affect the statutory obligation of each and every Debtor to pay quarterly fees to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) and Article XIII of this Plan.

In the event that the Bankruptcy Court authorizes the Debtors to substantively consolidate less than all of the Debtors' Estates: (a) the Plan shall be treated as a separate plan of reorganization for each Debtor not substantively consolidated; and (b) the Debtors shall not be required to re-solicit votes with respect to the Plan.

5.2     *Compromise of Controversies.*

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

5.3     *Settlement of Claims.*

All Plan distributions made to creditors holding Allowed Claims in any class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one class shall be subject to being shared with or reallocated to the holders of any Claim in another class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency Claim.

5.4     *Cancellation of Existing Securities and Agreements.*

Except (a) as otherwise expressly provided in the Plan; (b) with respect to executory contracts or unexpired leases that have been assumed by the Debtors; (c) for purposes of evidencing a right to distributions under the Plan; or (d) with respect to any Claim that is reinstated and rendered unimpaired under the Plan, on the Effective Date, the Prepetition Credit Agreement, all Old Common Interests and other instruments evidencing any Claims against or Old Common Interests in the Debtors shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.

5.5     *Issuance of New Common Stock.*

The issuance of the New Common Stock by Reorganized GPH is authorized without the need for any further corporate action or without further action by a Holder of Claims or Equity Interests.  The total number of shares of capital stock authorized under the New Certificate of Incorporation of the Reorganized Debtors shall be [●] shares.  On the Effective Date, shares of New Common Stock shall be issued and distributed to the Holders of Claims in Class 5 on a Pro Rata basis.

All of the shares of New Common Stock issued pursuant to the Plan shall be issued to the Holders of Claims in Class 5 and shall be duly authorized, validly issued, fully paid and non-assessable.  Each distribution and issuance referred to in Article V hereof shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance, which terms and conditions shall bind each Entity receiving such issuance or distribution.

Upon the Effective Date, in the event the holders of the Prepetition Credit Agreement Secured Claims determine that a Registration Rights Agreement and/or a Shareholders Agreement are advisable, then Reorganized GPH shall enter into such agreements with each entity that is to be a counter-party thereto or such agreements shall be deemed to be valid, binding and enforceable in accordance with their respective terms and each holder of New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized GPH.  Notwithstanding the foregoing, holders of New Common Stock may be permitted to be signatories to the Shareholders Agreement and Registration Rights Agreement (if any) if they so desire.

5.6     *Liquidating Trust*

(a)     The Liquidating Trust shall be formed as a Delaware trust to: (i) prosecute certain Avoidance Actions originally owned by the Debtors, and, if any of the prosecutions are successful or are settled in a manner that derives economic benefit to the Liquidating Trust, to distribute to the holders of

Beneficial Interests the net proceeds of such causes of action as provided below and as set forth in the Liquidating Trust Agreement; and (ii) as applicable, investigate, enforce, abandon, prosecute, resolve, defend against, compromise and settle Disputed Priority Tax Claims, Disputed Priority Claims and Disputed General Unsecured Claims. The Liquidating Trust will continue in existence for a period of three years or until the distribution of all of its property, whichever occurs first, except that if the supervisors of the Liquidating Trust determine that it is necessary to extend the duration of the Liquidating Trust to accomplish the Liquidating Trust's purposes, they may make an application to do so to the Bankruptcy Court prior to the expiration of the third year of the Liquidating Trust. The Bankruptcy Court shall retain jurisdiction regarding the Liquidating Trust's operations.

(b) Funding of the Liquidating Trust. On the Effective Date, the Debtors shall capitalize the Liquidating Trust with the Trust Cash, and the remainder of the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the Beneficial Interest in the Liquidating Trust. The Liquidating Trust shall be treated as a grantor trust for federal income tax purposes, and the Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets. The Liquidating Trustee shall value the Liquidating Trust Assets as of the Effective Date and shall notify in writing the Beneficiaries of such valuations. Each of the Liquidating Trust, the Liquidating Trustee and the Beneficiaries shall be required to use such valuations for all applicable reporting purposes, including for federal income tax purposes.

(c) Assets of the Liquidating Trust. The Liquidating Trust will own those assets set forth on Schedule I hereto, which includes the rights to Avoidance Actions currently held by the Debtors, and the proceeds, net of costs, thereof. The causes of action held by the Liquidating Trust may not be successful and there is no guarantee that the Liquidating Trust will ever make distributions.

(d) Fees and Expenses of the Liquidating Trust. Except as otherwise ordered by the Court, the expenses incurred by the Liquidating Trust on or after the Effective Date may be paid by the Liquidating Trust in accordance with the Liquidating Trust Agreement, without further order of the Bankruptcy Court.

(e) Ownership of the Liquidating Trust. Ownership in the Liquidating Trust will be evidenced by book entries. The Beneficial Interests will be non-voting and will not confer any rights as shareholders. The Beneficial Interests will not be transferable by a Holder except: (i) to any relative, spouse, or relative of the spouse of the Holder, (ii) to any trust or estate in which such Holder has more than a 50% interest of the beneficial interest (excluding contingent interests), (iii) to any corporation, partnership, or other organization in which such Holder is the beneficial owner of more than 50% of the equity securities (excluding directors qualifying shares) so long as the transferor and transferee certify that there is no current intention of changing the direct and indirect ownership of the transferee, (iv) to any person or entity that holds directly or indirectly, more than 50% of the voting securities of such Holder, or (v) upon the death of such Holder in accordance with the operation of law. The Liquidating Trustee will take reasonable actions to prohibit the formation of an active trading market in the Beneficial Interests and otherwise to prevent transfers of Beneficial Interests that could cause the Liquidating Trust to be treated as a publicly traded partnership if the Liquidating Trust were treated as a partnership rather than a trust for federal income tax purposes.

(f)     Priority of Distributions from Liquidating Trust.  The Liquidating Trustee shall distribute periodically to Beneficiaries from the Liquidating Trust Assets the Available Cash by allocating (i) the Secured Creditor Share of the Available Cash on account of the Secured Creditor Trust Interests and disbursing such allocated share of the Available Cash on a *pro rata* basis to the holders of the Secured Creditor Interests and (ii) the Unsecured Creditor Share of Available Cash on account of the Unsecured Creditor Interests, and disbursing such allocated share of the Available Cash to the holders of the Unsecured Trust Interests in the order and reflecting the priorities set forth below:

> FIRST, pro rata, to the beneficial holders of Priority Claim Trust Interests, until all Allowed Priority Claims are paid in full;
>
> SECOND, pro rata, to the beneficial holders of Priority Tax Claim Trust Interests, until all Allowed Priority Tax Claims are paid in full;
>
> THIRD, pro rata, to the beneficial holders of General Unsecured Trust Interests, until all Allowed General Unsecured Claims are paid in full; and
>
> FOURTH, to a charity chosen by the Liquidating Trustee in its sole discretion.

(g)     Management of the Liquidating Trust.  The Liquidating Trust will be managed by a liquidating trustee and two supervisors, all of whom shall be selected by the holders of the Allowed Prepetition Credit Agreement Secured Claims.  Generally, the Liquidating Trustee will have the authority to manage, dispose of, and invest the assets of the Liquidating Trust but will be required to obtain the consent of the supervisors to take certain actions, including early termination of the Liquidating Trust, entering into contracts involving amounts greater than $15,000, borrowing of funds, and making distributions.

(h)     Reporting by the Liquidating Trust.  The Liquidating Trust Agreement will require that the Liquidating Trust distribute quarterly and annual reports containing unaudited financial information reflecting the activities of the Liquidating Trust with respect to its assets and distributions, as well as current reports promptly following the occurrence of any events sufficiently material to mandate the issuance of such a report.  Such reports shall be distributed in a manner, including by electronic mail or by posting to a secure website, as deemed appropriate by the Liquidating Trustee.

### 5.7     *Corporate Existence.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state law).

### 5.8     *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in the Estates of the Debtors, all Causes of Action (other than the Avoidance Actions to be vested in the Liquidating Trust), and any property acquired by

the Debtors pursuant to the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims, Interests, or Causes of Action (other than the Avoidance Actions that are included in the Liquidating Trust) without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

5.9     ***Corporate Action.***

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) selection of directors, (ii) the issuance and distribution of the New Common Stock, and (iii) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors, the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officer of the Debtors, the Reorganized Debtors. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of Reorganized GPH. The authorizations and approvals contemplated by this section 5.9 shall be effective notwithstanding any requirement under nonbankruptcy law. The issuance of the New Common Stock and Beneficial Interests shall be exempt from the requirements of section 16(b) of the Securities Exchange Act of 1934 (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

5.10     ***Directors and Officers of the Reorganized Debtors.***

As of the Effective Date, the term of each of the current members of the boards of directors of each of the Debtors shall expire, and the initial board of directors and officers of Reorganized GPH shall be appointed in accordance with its New Certificate of Incorporation and New By-Laws, and the initial boards of directors and officers of each of the other Reorganized Debtors shall be appointed in accordance with their certificates of incorporation and by-laws. The New Board of Reorganized GPH shall consist of [●] members, as set forth on Exhibit E hereto or as designated by the Prepetition Lenders at or prior to the Confirmation Hearing.

5.11     ***Effectuating Documents; Further Transactions.***

On and after the Effective Date, the Reorganized Debtors and their officers and directors are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations or consents except those expressly required pursuant to the Plan.

5.12     ***Operations of the Debtors Between the Confirmation Date and the Effective Date.***

The Debtors shall continue to operate as Debtors in Possession during the period from the Confirmation Date through and until the Effective Date.

5.13     ***Terms of Injunctions or Stays.***

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Cases are closed.

## ARTICLE VI

## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

6.1     ***Voting of Claims.***

Each holder of an Allowed Claim in an impaired class of Claims as of the Voting Record Date that is entitled to vote on the Plan pursuant to Article III and Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan.

6.2     ***Allowance of Prepetition Credit Agreement Claims.***

The Prepetition Credit Agreement Claims are hereby Allowed in an aggregate amount equal to $[•] of principal and $[•] of interest, $[•] of which shall be an Allowed Prepetition Credit Agreement Secured Claim, and $[•] of which shall be a Prepetition Credit Agreement Unsecured Claim.

6.3     ***Nonconsensual Confirmation.***

If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Article XIII of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to the class of Old Common Interests, which is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

6.4     ***Timing and Calculation of Amounts to Be Distributed.***

Unless otherwise provided in the Plan, on the Initial Distribution Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim on the Effective Date, on the first Distribution Date that is after the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Plan on or as soon as reasonably practicable after the next Distribution Date that is at least 20 calendar days after the Allowance of each such Claim. Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

6.5     ***Disbursing Agent.***

All distributions under the Plan shall be made by the Debtors, the Reorganized Debtors or the Liquidating Trustee, as the case may be in each case as Disbursing Agent, or such other Entity designated

by the Debtors or the Reorganized Debtors as a Disbursing Agent on the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

6.6     ***Rights and Powers of Disbursing Agent.***

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.7     ***Expenses of the Disbursing Agent.***

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including, without limitation, taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Liquidating Trust in the ordinary course of business.

6.8     ***Distributions on Account of Claims Allowed After the Effective Date.***

(a)     Payments and Distributions on Disputed Claims

Notwithstanding any other provision of the Plan, no distributions shall be made under the Plan to the holder of any Disputed Claim on account of the Disputed Claim, unless and until such Claim becomes an Allowed Claim, and any distributions made by the Liquidating Trust in respect of any Beneficial Interests held in the Disputed Claims Reserve shall be retained in the Disputed Claims Reserve until such time as such Beneficial Interests are distributed pursuant to Section 6.8(d) hereof. Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

(b)     Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Disputed Claims have been Allowed.

(c)     Disputed Claims Reserve

Subject to the receipt of any definitive guidance of the IRS or the Bankruptcy Court, the Disputed Claims Reserve is intended to qualify and to be treated as a disputed ownership fund pursuant to Treasury Regulation Section 1.468B-9. As such, the Disputed Claims Reserve shall be treated for federal income tax purposes as a separate entity taxable as a "C corporation" and, therefore, shall report and pay any taxes on its income.

(d)     Deposit of Beneficial Interests on the Effective Date

(i)     The Disputed Claims Reserve shall be comprised of the Disputed Priority Tax Claims Reserve, the Disputed Priority Claims Reserve, and the Disputed General Unsecured Claims Reserve. On the Effective Date (or as soon thereafter as is reasonably practicable), the Reorganized Debtors shall deposit from the Liquidating Trust into the:

- Disputed Priority Tax Claims Reserve the Priority Tax Claim Trust Interests that would have been distributed to the Holders of Disputed Priority Tax Claims if such Disputed Priority Tax Claims had been Allowed Priority Tax Claims on the Effective Date to ensure that the Holders of Allowed Priority Tax Claims receive the same percentage recovery from the Liquidating Trust on account of their individual Claims at all times. The amount of Priority Tax Claim Trust Interests to be deposited in the Disputed Priority Tax Claims Reserve will be determined based on the lesser of (a) the asserted amount of the Disputed Priority Tax Claim filed with the Bankruptcy Court or (if no proof of such Claim was filed) scheduled by the Debtors, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) the amount otherwise agreed to by the Debtors and the Holder of such Disputed Priority Tax Claims.

- Disputed Priority Claims Reserve the Priority Claims Trust Interests that would have been distributed to the Holders of Disputed Priority Claims if such Disputed Priority Claims had been Allowed Priority Claims on the Effective Date to ensure that the Holders of Allowed Priority Claims receive the same percentage recovery from the Liquidating Trust on account of their individual Claims at all times. The amount of Priority Claims Trust Interests to be deposited in the Disputed Priority Claims Reserve will be determined based on the lesser of (a) the asserted amount of the Disputed Priority Claim filed with the Bankruptcy Court or (if no proof of such Claim was filed) scheduled by the Debtors, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) the amount otherwise agreed to by the Debtors and the Holder of such Disputed Priority Claim.

- Disputed General Unsecured Claims Reserve the General Unsecured Claim Trust Interests that would have been distributed to the Holders of Disputed General Unsecured Claims if such Disputed General Unsecured Claims had been Allowed General Unsecured Claims on the Effective Date to ensure that the Holders of Allowed General Unsecured Claims receive the same percentage recovery from the Liquidating Trust on account of their individual Claims at all times. The amount of General Unsecured Claim Trust Interests to be deposited in the Disputed General Unsecured Claims Reserve will be determined based on the lesser of (a) the asserted amount of the Disputed General Unsecured Claim filed with the Bankruptcy Court or (if no proof of such Claim was filed) scheduled by the Debtors, (b) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, or (c) the amount otherwise agreed to by the Debtors and the Holder of such Disputed General Unsecured Claims.

(ii)     Distributions After Allowance.

(1) The Liquidating Trustee shall distribute from the Disputed Priority Tax Claims Reserve to the Holder of any Disputed Priority Tax Claim that has become an Allowed Priority Tax Claim, no later than the next Interim Distribution Date that is at least 20 calendar days after the date on which such Disputed Priority Tax Claim becomes an Allowed Priority Tax Claim, Priority Tax Claim Trust Interests in an amount equal to the Pro Rata share of the Priority Tax Claim Trust Interests in the Liquidating Trust that such Holder would have received on account of such Claim if such Claim had been an Allowed Priority Tax Claim on the Effective Date.

(2) The Liquidating Trustee shall distribute from the Disputed Priority Claims Reserve to the Holder of any Disputed Priority Claim that has become an Allowed Priority Claim, no later than the date

arising after the next Interim Distribution Date that is at least 20 calendar days after the date on which such Disputed Priority Claim becomes an Allowed Priority Claim, Priority Claim Trust Interests in an amount equal to the Pro Rata share of the Priority Claim Trust Interests in the Liquidating Trust that such Holder would have received on account of such Claim if such Claim had been an Allowed Priority Claim on the Effective Date.

(3) The Liquidating Trustee shall distribute from the Disputed General Unsecured Claims Reserve to the Holder of any Disputed General Unsecured Claim that has become an Allowed General Unsecured Claim, no later than the date arising after the next Interim Distribution Date that is at least 20 calendar days after the date on which such Disputed General Unsecured Claim becomes an Allowed General Unsecured Claim, General Unsecured Claim Trust Interests in an amount equal to the Pro Rata share of the General Unsecured Claim Trust Interests in the Liquidating Trust that such Holder would have received on account of such Claim if such Claim had been an Allowed General Unsecured Claim on the Effective Date.

(iii)     Distributions After Disallowance

(1) If a Disputed Priority Tax Claim is disallowed, in whole or in part, the Liquidating Trustee shall on or as soon as reasonably practicable after the next Interim Distribution Date that is at least 20 calendar days after such disallowance distribute the Priority Tax Claim Trust Interests, reserved in respect of such disallowed Disputed Priority Tax Claim from the Liquidating Trust to Holders of Allowed Priority Tax Claims in a manner designed to ensure that the Holders of Allowed Priority Tax Claims receive the same Pro Rata share of beneficial interests in the Liquidating Trust as they would have received if the Disputed Priority Tax Claim had been disallowed on or before the Effective Date.

(2) If a Disputed Priority Claim is disallowed, in whole or in part, the Liquidating Trustee shall on or as soon as reasonably practicable after the Interim Distribution Date that is at least 20 calendar days after such disallowance distribute the Priority Claim Trust Interests, reserved in respect of such disallowed Disputed Priority Claim from the Liquidating Trust to Holders of Allowed Priority Claims in a manner designed to ensure that the Holders of Allowed Priority Claims receive the same Pro Rata share of beneficial interests in the Liquidating Trust as they would have received if the Disputed Priority Claim had been disallowed on or before the Effective Date.

(3) If a Disputed General Unsecured Claim is disallowed, in whole or in part, the Liquidating Trustee shall on or as soon as reasonably practicable after the Interim Distribution Date that is at least 20 calendar days after such disallowance distribute the General Unsecured Claim Trust Interests, reserved in respect of such disallowed Disputed General Unsecured Claim from the Liquidating Trust to Holders of Allowed General Unsecured Claims in a manner designed to ensure that the Holders of Allowed General Unsecured Claims receive the same Pro Rata share of beneficial interests in the Liquidating Trust as they would have received if the Disputed General Unsecured Claim had been disallowed on or before the Effective Date.

(iv)     Distributions of Unsecured Trust Interests to Holders of Claims following the allowance or disallowance of Disputed Claims pursuant to Section 6.8(d)(ii) or Section 6.8(d)(iii) shall include any proceeds previously received by the Disputed Claims Reserve in respect of such Unsecured Trust Interests, and shall be net of any taxes paid or payable by the Disputed Claims Reserve as a result of having held such Unsecured Trust Interests.

6.9     ***Delivery of Distributions and Undeliverable or Unclaimed Distributions.***

(a)     Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder, or if no Proof of Claim was filed, in the Schedules.

(b)     Minimum Distributions

No fractional shares of New Common Stock or Beneficial Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock or Beneficial Interests that is not a whole number, the actual distribution of shares of New Common Stock or Beneficial Interests shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Common Stock and Beneficial Interests to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

Notwithstanding any other provision of this Plan, the Disbursing Agent shall not have any obligation to make any distributions under this Plan with a value of less than $50, unless a written request therefor is received by the Liquidating Trustee from the relevant recipient at the address set forth in the Liquidating Trust Agreement.

Notwithstanding any other provision of this Plan, the Disbursing Agent shall not have any obligation to make any distribution to any holder of an Allowed Claim on a particular Interim Distribution Date if the aggregate economic value of all distributions authorized to be made to all holders of Allowed Claims on such Interim Distribution Date is less than $20,000.

(c)     Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further Order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Equity Interest in property shall be discharged and forever barred.

6.10    **Compliance with Tax Requirements/Allocations.**

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made

under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors and Disbursing Agent reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances.

6.11    *Manner of Payment.*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

6.12    *Setoffs and Recoupment.*

The Debtors may, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that the Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such Claim it may have against such claimant. In no event shall any Holder of Claims or Equity Interests be entitled to recoup any Claim or Equity Interest against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Equity Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

6.13    *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

6.14    *Claims Paid or Payable by Third Parties.*

(a)    Claims Paid by Third Parties

The Debtors, the Reorganized Debtors or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Reorganized Debtors or the Liquidating Trustee. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a payment or distribution on account of such Claim from a party that is not a Debtor or the Reorganized Debtors or the Liquidating Trustee, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

(b)     Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Further, distributions to be made on account of an Allowed 503(b)(9) Administrative Claim and Buyer Assumed Liabilities shall be made, and are payable, by Buyer pursuant to the Asset Purchase Agreement and the Sale Order. To the extent that Buyer satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)     Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

6.15    ***Allocation of Plan Distributions Between Principal and Interest.***

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

## ARTICLE VII

## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

7.1     **Objections.**

On and after the Confirmation Date, the Debtors, the Reorganized Debtors or the Liquidating Trustee, as applicable (a) shall have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims and (b) shall be permitted to settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

7.2     ***No Distributions Pending Allowance.***

Notwithstanding any other provision hereof, if any portion of an Administrative Expense Claim or Claim is Disputed, no payment or distribution provided hereunder shall be made on account of such Administrative Expense Claim or Claim unless and until such Disputed Claim or Disputed Administrative Expense Claim becomes Allowed.

7.3 **_Allowance of Claims and Interests._**

Except as expressly provided herein or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code, under the Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under section 502 of the Bankruptcy Code. Except as expressly provided in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors after Confirmation will have and retain any and all rights and defenses the Debtors had with respect to any Claim as of the Petition Date or any date thereafter. All Claims of any Entity that owes money to the Debtors shall be disallowed unless and until such Entity pays, in full, the amount it owes the Debtors.

7.4 **_Estimation of Claims._**

The Debtors, the Reorganized Debtors or the Liquidating Trustee, as applicable, may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, the Reorganized Debtors or the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

7.5 **_Interest._**

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 **_Assumption or Rejection of Executory Contracts and Unexpired Leases._**

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that are (1) to be assumed pursuant to the terms of this Article VIII hereof, (2) identified on the Assumed Executory Contract and Unexpired Lease List, (3) the subject of a motion to assume Executory Contracts or Unexpired Leases that is pending on the Effective Date, or (4) subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections and the assumption of the Executory Contracts or Unexpired Leases listed on the Assumed Executory Contract

and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Section 8.1 or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Effective Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

8.2     ***Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.***

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to section 8.1 of the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to section 8.1 of the Plan.

8.3     ***Cure of Defaults.***

Any monetary amount by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of such amount in Cash, on the Effective Date, or upon such other terms as the parties to such executory contract or unexpired lease may otherwise agree. If a dispute arises regarding (a) the amount of any cure payments required under section 365(b)(1) of the Bankruptcy Code, (b) the ability of the Reorganized Debtor or any assignee thereof to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), the cure payments required under section 365(b)(1) of the Bankruptcy Code, if any, shall be made following the entry of a Final Order resolving such dispute.

8.4     ***Claims Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.***

Proofs of Claim for damages arising out of the rejection of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served upon the attorneys for the Debtors on or before the date that is thirty (30) days after the later of (a) the date of service of notice of the Confirmation Date; or (b) the date of service of notice of such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults (solely with respect to the party directly affected by such rejection). In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their properties or interests in property as agents, successors or assigns.

8.5     ***Modifications, Amendments, Supplements, Restatements or Other Agreements.***

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed or rejected shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

8.6     *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Commencement Date to indemnify, defend, reimburse or limit the liability of directors, officers or employees who are directors, officers or employees of the Debtors on or after the Confirmation Date, respectively, against any claims or causes of action as provided in the Debtors' certificates of incorporation, bylaws, other organizational documents or applicable law, shall survive confirmation of the Plan, remain unaffected thereby and not be discharged, irrespective of whether such indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before or after the Commencement Date.

8.7     *Insurance Policies.*

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are continued. Nothing contained in this section shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

8.8     *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contract or Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE IX**

**CORPORATE GOVERNANCE AND MANAGEMENT**
**OF THE REORGANIZED DEBTORS**

9.1     *General.*

On the Effective Date, the management, control and operation of the Reorganized Debtors shall become the general responsibility of the New Board of Reorganized GPH.

9.2     *New Organizational Documents.*

Reorganized GPH shall be deemed to have adopted its New Organizational Documents effective as of the Effective Date. On the Effective Date, or as soon thereafter as practicable, Reorganized GPH shall file its New Organizational Documents, as required or deemed appropriate, with the appropriate Persons in their respective jurisdictions of incorporation or establishment. The New Organizational

Documents, to the extent applicable, shall prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

9.3     ***New Board of the Reorganized Debtors.***

On the Effective Date, the operation of Reorganized GPH shall become the general responsibility of the New Board, subject to, and in accordance with, the New Organizational Document.  The initial New Board of Reorganized GPH shall consist of [●] members.  The initial members of the New Board of Reorganized GPH shall be set forth on <u>Exhibit E</u> hereto or as designated by the Prepetition Lenders at or prior to the Confirmation Hearing.

9.4     ***Officers of Reorganized GPH.***

The initial officers of Reorganized GPH on and after the Effective Date will be identified at or prior to the Confirmation Hearing.  Such officers shall serve in accordance with applicable non-bankruptcy law, any employment agreement entered into with Reorganized GPH on or after the Effective Date and the New Organizational Documents.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

10.1     ***Conditions Precedent to Confirmation.***

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X hereof:

1.     The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtors and the Prepetition Lenders.

2.     The Confirmation Order shall:

a)     authorize the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases, indentures and other agreements or documents created in connection with the Plan;

b)     decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependant;

c)     authorize Reorganized GPH to issue the New Common Stock pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements;

d)     decree that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

e)     authorize implementation of the Plan in accordance with its terms; and

f)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the plan of reorganization, including any deeds, bills of sale or assignments executed in connection with any disposition or transfer of assets contemplated by the plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

10.2    *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X hereof:

1.      The Confirmation Order, in form and substance acceptable to the Debtors and the Prepetition Lenders, shall have been entered and is a Final Order.

2.      All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors and the Prepetition Lenders.

3.      The Debtors shall have received all authorizations, consents and regulatory approvals, if any, that are necessary to implement and effectuate the Plan.

10.3    *Waiver of Conditions.*

Each of the conditions precedent in section 10.1 and section 10.2 hereof may be waived, in whole or in part, by the Debtors.  Any such waivers may be effected at any time, without notice, without leave or order of the Bankruptcy Court and without any formal action.

10.4    *Satisfaction of Conditions.*

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  In the event that one or more of the conditions specified in section 10.2 of the Plan have not occurred or otherwise have not been waived pursuant to section 10.3 of the Plan, (a) the Confirmation Order shall be vacated; (b) the Debtors and all holders of Claims and Equity Interests including any Old Common Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred and (c) the Debtors' obligations with respect to Claims, Liens and Equity Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims, Liens or Equity Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

## ARTICLE XI

## EFFECT OF CONFIRMATION

11.1    *Binding Effect.*

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Old Common Interest in, the Debtors

and such holder's respective successors and assigns, whether or not the Claim or Old Common Interests including any Old Common Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

11.2    ***Discharge of Claims and Termination of Old Common Interests.***

Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall terminate all Old Common Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Old Common Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Old Common Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees or any of their assets or properties, any other or further Claim or Old Common Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Old Common Interest and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

11.3    ***Discharge.***

**Upon the Effective Date, in consideration of the distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Old Common Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Old Common Interests, rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Old Common Interest in the Debtors.**

11.4    ***Injunction or Stay.***

**Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against or Old Common Interests in Graphics Properties and all other parties in interest in the Chapter 11 Cases, along with their respective current and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from, in each case in respect of such Claims or Old Common Interests (a) commencing or continuing in any manner any action or other proceeding of any kind against any of the Reorganized Debtors; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Debtor or Reorganized Debtor; (c) creating, perfecting or enforcing any encumbrance of any kind against any Debtor or Reorganized Debtor or against the property or interests in property of any Debtor or Reorganized Debtor; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Debtor or Reorganized Debtor or against the property or interests in property of any Reorganized Debtor and (e) pursuing any claim released pursuant to this Article XI of the Plan, *provided, however*, that nothing contained herein shall preclude such entities from exercising their rights pursuant to and consistent with the terms hereof and the terms of the contracts, instruments, releases and other agreements and documents delivered under or in connection with the Plan.**

11.5     *Injunction Against Interference With the Plan.*

**Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.  Each holder of an Allowed Claim, by accepting distributions pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Section 11.4, Section 11.6 and Section 11.7.**

11.6     *Terms of Injunction or Stay.*

**Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

11.7     *Exculpation.*

**Notwithstanding anything herein to the contrary, as of the Effective Date, none of the Debtors, the Reorganized Debtors, the Prepetition Lenders, and their respective officers, directors, members, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors and attorneys and representatives (but solely in their capacities as such) shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.  Without limiting the generality of the foregoing, the Debtors and the Reorganized Debtors shall, in all respects, be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.  Nothing in this Section 11.7 shall limit the liability of the professional to their respective clients pursuant to the applicable ethical rules.**

11.8     *Releases.*

**Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of the present directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of or to the Debtors who acted in such capacities after the Commencement Date; (x) the Debtors; (y) each holder of a Claim that votes to accept the Plan (or is deemed to accept the Plan); and (z) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim that does not vote to accept the Plan, shall release unconditionally and forever each present director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors who acted in such capacity after the Commencement Date from any and all Claims or causes of action whatsoever in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation thereof, the administration**

**thereof or the property to be distributed thereunder;** *provided*, *however*, **that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or gross negligence of any such person or entity.**

11.9    *Avoidance Actions/Objections.*

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Liquidating Trustee shall have the right to prosecute any and all avoidance actions, recovery causes of action and objections to Claims under sections 105, 502, 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.1    *Jurisdiction.*    The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

1.    To hear and determine pending applications for the assumption or rejection of Executory Contracts or Unexpired Leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to Executory Contracts or Unexpired Leases relating to facts and circumstances arising out of or relating to the Chapter 11 Cases;

2.    To determine any and all adversary proceedings, applications and contested matters;

3.    To hear and determine all applications for compensation and reimbursement of expenses under sections 330, 331 and 503(b) of the Bankruptcy Code;

4.    To hear and determine any timely objections to, or requests for estimation of Disputed Administrative Expense Claims and Disputed Claims, in whole or in part;

5.    To resolve disputes as to the ownership of any Administrative Expense Claim, Claim or Old Common Interest;

6.    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

7.    To issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

8.    To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

9.    To hear and determine disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document

governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

10. To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Reorganized Debtors or the Liquidating Trustee after the Effective Date for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

11. To hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plan, the Confirmation Order or the Bankruptcy Code;

12. To issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

13. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

14. To hear and determine any rights, Claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

15. To recover all assets of the Debtors and property of the Debtors' estates, wherever located;

16. To enter a final decree closing the Chapter 11 Cases; and

17. To hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1 *Immediate Binding Effect.*

Subject to Article X and notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### 13.2 *Additional Documents.*

On or before the Effective Date, the Debtors or the Reorganized Debtors, with the consent of the Prepetition Lenders, may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The

Debtors or Reorganized Debtors, as applicable, and all Holders of Claims or Equity Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

13.3   ***Preservation of Causes of Action.***

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article XIII hereof and to the extent that such Avoidance Actions are not transferred to the Liquidating Trust and contributed to the Liquidating Trust, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, including Avoidance Actions and the ATI Litigation, whether arising before or after the Commencement Date, including any actions specifically enumerated in Exhibit B hereto, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.   The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.   No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.   The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action, including the ATI Litigation, against any Entity, except as otherwise expressly provided in the Plan.   Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors or the Liquidating Trust, as applicable, reserve and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.   In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors, as the case may be.   The applicable Reorganized Debtor, or the Liquidating Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.   The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

13.4   ***Preservation of Avoidance Actions.***

On and after the Effective Date, any and all Avoidance Actions shall be preserved and retained by the Reorganized Debtors or the Liquidating Trust to the extent an Avoidance Action is transferred by the Debtors thereto, as applicable, which shall have the exclusive right, as applicable, to enforce, settle, release, abandon, or prosecute any such Avoidance Actions.   Any recovery received on account of an Avoidance Action transferred to the Liquidating Trust will be the sole property of the Liquidating Trust and is subject to the terms and conditions of the Liquidating Trust Agreement.   Reorganized GPH may offset any claim supporting an Avoidance Action against any payment or Distribution due to any Holder of a Claim under the Plan.   In addition, if a Distribution is made in error, the Reorganized Debtors can bring an action pursuant to section 502(d) of the Bankruptcy Code to recoup such Distribution.

13.5    *Section 1145 Exemption.*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the: (i) New Common Stock as contemplated by Section 4.5 of the Plan to Class 5; (ii) Beneficial Interests as contemplated by Article IV of the Plan to Classes 3, 4, 5 and 6, respectively, shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code, such New Common Stock will be freely tradable by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and subject to any restrictions in the Shareholders Agreement, and any restrictions that may be set forth in the New Organizational Documents.

13.6    *Section 1146 Exemption.*

Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

13.7    *Payment of Statutory Fees.*

All fees payable pursuant to 28 U.S.C. § 1930 after the Effective Date will be paid by the Liquidating Trust in accordance therewith until the earlier of the conversion or dismissal of the applicable Chapter 11 Case under section 1112 of the Bankruptcy Code, or the closing of the applicable Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

13.7    *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

13.8    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Prepetition Lenders, reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, with the consent of the Prepetition Lenders, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, with the consent of the Prepetition Lenders, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XIII.

13.9    ***Effect of Confirmation on Modifications.***

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

13.10   ***Successors and Assigns.***

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of such Entity.

13.11   ***Service of Documents.***

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

Graphics Properties Holdings, Inc.                   [counsel]
Attn:

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

13.12   ***Entire Agreement.***

Except as otherwise indicated, the Plan shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.13   ***Exhibits.***

All exhibits and documents attached hereto are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Debtors' notice, claims, and balloting agent, Donlin Recano, or the Bankruptcy Court's website at www.nysb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

13.14   ***Nonseverability of Plan Provisions.***

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The

Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

### 13.15    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

### 13.16    *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

### 13.17    *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, the Agent or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

### 13.18    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

### 13.19    *Post-Confirmation Reporting.*

The Reorganized Debtors shall file reports of their respective activities and financial affairs with the Bankruptcy Court on a quarterly basis, within thirty (30) days after the conclusion of each such period. Any such reports shall be prepared substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and U.S. Trustee guidelines for such matters.

Dated:  August 17, 2009

GRAPHICS PROPERTIES HOLDINGS, INC.
(for itself and on behalf of each of the Debtors)

By: _____

Name:  Barry J. Weinert

Title:   Chief Restructuring Officer